CHECKPOINT SYSTEMS, INC., and I.D.
Engineering, Inc., Plaintiffs,

v.

KNOGO CORPORATION, Defendant.

No. 75 C 1289.

United States District Court,
E. D. New York.

March 24, 1980.

systems in this country and abroad. In May 1975 Checkpoint became the exclusive licensee of the 280 patent.

Knogo Corporation is a New York corporation having its principal place of business at Hicksville, New York. Knogo has been and is a leading manufacturer of electronic theft systems since about 1965. Knogo manufactures and supplies magnetically releasable fasteners known as the "Instamatic" fasteners which are used in conjunction with its electronic theft detection system.

This Court has jurisdiction of the parties and the subject matter of the complaint under 28 U.S.C. § 1338(a) and under the Patent Laws of the United States, 35 U.S.C. §§ 100–03, 112, 271, 281, 282 and 285; and venue is properly laid in this District under 28 U.S.C. § 1400(b). The Court's jurisdiction as to defendant's declaratory judgment counterclaim arises under the Patent Laws and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

The electronic theft detection systems supplied by Knogo, Checkpoint and I.D. are used to protect against shop-lifting and similar activity. These systems make use of a device for detecting electrical signals in the region of a doorway or other exit path from a protected area. Special electrical signaling circuits are encased in plastic wafers, and these wafers are fastened to various articles of merchandise. If a person attempts to carry an article of merchandise past the doorway with a wafer attached, signals from its electrical circuit will be detected by the detection device, and an alarm will be sounded. On the other hand, when a legitimate sale is made, the wafer is removed by a salesperson and the merchandise may then be taken past the doorway without setting off the alarm.

This litigation, however, involves only a specific type of fastener for securing the waiver to the protected article. It does not relate to the electronic detecting mechanism for detecting electrical signals, nor does it relate to the electrical signaling devices or the wafers. The fasteners which form the subject matter of this litigation are, in fact, only a small part of the electronic theft detection system.

Rogers, Hoge & Hills, New York City, by James N. Blair, New York City, Wolf, Block, Schorr & Solis-Cohen by Steven A. Arbittier, and Francis J. Bouda, Philadelphia, Pa., for plaintiffs.

Fitzpatrick, Cella, Harper & Scinto, New York City, by Lawrence F. Scinto, William J. Brunet, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

SIFTON, District Judge.

This is an action brought by plaintiffs, Checkpoint Systems, Inc. ("Checkpoint") and I.D. Engineering, Inc. ("I.D."), against defendant, Knogo Corporation ("Knogo"), for infringement of United States Patent No. 3,858,280 (the "280 Patent"). A trial was held in April and May 1979, and the following constitutes the findings of fact and conclusions of law of this Court as required by Fed.R.Civ.P. 52(a).

I.D. is a Massachusetts corporation having its principal place of business at Peabody, Massachusetts. It has been and is in the business of manufacturing, selling and leasing electronic theft detection systems in this country and abroad. I.D. is the owner, by assignment, of the 280 patent.

Checkpoint is a Pennsylvania corporation having its principal place of business in Barrington, New Jersey. It has been and is currently in the business of manufacturing, selling and leasing electronic theft detection

This action was originally filed on August 8, 1975, alleging that defendant's fastener infringed the 280 Patent. Subsequently, on March 25, 1976, plaintiffs received permission to file a second amended complaint charging that this same fastener infringed another closely related patent, United States Patent No. 3,911,534 (the "534 Patent"). Plaintiffs subsequently filed a disclaimer of the 534 Patent in the United States Patent and Trademark Office (the "Patent Office") and moved to dismiss their cause of action relating thereto.

Defendant filed a cross-motion for an order dismissing with prejudice plaintiffs' second amended complaint in its entirety because of misconduct with respect to the 534 Patent and granting defendant its costs and attorneys' fees and such other and further relief as the Court may deem just and proper. Plaintiffs' motion was granted by Judge Costantino, and decision on defendant's cross-motion was reserved pending trial of plaintiffs' first cause of action, and defendant was granted leave to file its amended answer and counterclaim asserting its "fraud" defense.

■ The evidence at trial did not establish any intentional misconduct or fraud on plaintiffs' part with respect to the 534 patent. The motion of defendant to dismiss the entire complaint predicated on such misconduct is, therefore, denied. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). However, for the reasons indicated below, the Court finds that the 280 patent is invalid and that the complaint must be dismissed.

## THE 280 PATENT

The 280 patent here in suit was granted on January 7, 1975, in the name of Martin A. J. Martens, as patentee, on an Application Serial No. 307,366 filed November 17, 1972. The general subject matter of the 280 patent is a fastening clip for securing two or more articles together in such a manner that they can be separated only by use of a special tool. In accordance with the 280 patent, the articles secured by the fasteners may be of any type, and the fastener is alleged to have utility as a general fastening device for any use, although the specific use described in the 280 patent for the fastener is in conjunction with an electronic theft detection system.

The fastener of the 280 patent uses a pin, which is pushed through the articles to be fastened together, and a lock assembly, which is pushed over the end of the pin to hold it in place. The lock assembly itself works on the conventional ball-wedge or ball-clutch principle which is found in tietacs, clothesline adjusters, and other fastener applications. In such devices there is provided a hollow cylindrical housing having an inner tapered well formed at one end thereof surrounding the pin. The balls are loosely carried in a retainer, and the retainer is forced by a spring toward the tapered wall of the housing so as to cause the balls to become wedged between the tapered housing wall and the pin, thus locking the pin into the housing.

The alleged departure of the fastener of the 280 patent from the prior art resides in the enclosure of the retainer entirely inside the cylindrical housing so that a special tool, such as a mechanical gripper (Fig. 5 of the 280 patent) or a magnet (Fig. 6 of the 280 patent), is required to be applied to the retainer in order to pull it back and release the balls from wedging engagement with the pin.

The fastener of the 280 patent proved to be unsuitable for commercial use. Fasteners like those described in the 280 patent using a mechanical tool to open them were demonstrated to prospective customers at an Atlanta, Georgia trade show in May 1972 and were found to be unacceptable. Prospective customers easily snapped off or otherwise removed the fasteners from the tags to which they were attached. Because of their unreliability, these fasteners were never manufactured for commercial use.

When confronted with this problem with the fastener, Martin Martens first attempted to make a shortened fastener operable by a mechanical tool. It was at this point

that the idea of using magnetism to open the fastener occurred to Martin Martens. Following a series of meetings between Martin Martens, Henry Martens and Jan Vandebunt, a "second generation" fastener was developed that was shorter and entirely covered with a plastic cap. This redesigned fastener, using a plastic housing and a metallic sleeve insert, was first sold by plaintiff I.D. in November 1973. At least one hundred thousand of these sleeve-type fasteners were sold by plaintiff I.D. No application for patent was ever filed by either plaintiff for the sleeve-type fastener.

## THE 534 PATENT

Plaintiff I.D. encountered problems with its "sleeve-type" fasteners which were due to the retainer malfunctioning in the sleeve and not allowing the balls to move into wedging or locking engagement with the pin. Plaintiff then modified its sleeve-type fastener by shortening the height of the metallic sleeve insert by one-half in order to create a "third generation" fastener. The fasteners with the shortened insert were referred to as "ring-type" fasteners in order to distinguish them from the earlier "sleeve-type" fasteners. These ring-type fasteners form the subject matter of the 534 Patent, which has since been disclaimed.

## THE CLAIMS IN SUIT

Plaintiffs have relied upon claims 1, 3 and 4 of the 280 Patent, which read as follows:

## "CLAIM 1

"A fastening clip for securing two or more articles together:

a. a general cylindrical housing the inner wall at one end of which is tapered to form a conical bore at such one end thereof,

b. a retainer loosely received entirely within said housing, said retainer including an upper portion of reduced outer diameter, a central cylindrical section having a diameter slightly less than the inside diameter of said housing so as to guide said retainer curing movement thereof, and a lower section formed with a conical exterior surface adapted to mate with said tapered wall of said housing, an axial bore extended entirely through said retainer, and at least one transverse opening formed in said lower section of said retainer, said opening being of relatively greater dimension than said axial opening,

c. a plurality of retaining balls positioned in said transverse opening and adapted to engage said tapered wall and intersect said axial bore,

d. spring means disposed around said upper portion of said retainer for resiliently biasing said retainer toward said tapered wall of said housing thereby biasing said balls toward said axial bore, and

e. pin means extending upwardly into said axial bore and tightly frictionally engaged by said retaining balls, any attempted withdrawal of said pin from said retainer serving to increase the frictional force on said pin exerted by said balls.

## "CLAIM 3

"The fastening clip of claim 1 wherein said retainer is constructed of magnetized material for actuation by a magnet positioned adjacent the upper end of the clip.

## "CLAIM 4

"The fastening clip of claim 1 wherein said transverse opening formed in said lower section of said retainer extends transversely entirely through said retainer, with a pair of balls being disposed in such transverse opening."

Because each claim of a patent must "be presumed valid independently of the validity of other claims," 35 U.S.C. § 282, this Court will consider each claim separately.

## PRESUMPTION OF VALIDITY

Every patent is, at least initially, entitled to a statutory presumption of validity. 35 U.S.C. § 282. If the Patent Office

failed to cite and consider the most relevant prior art, the statutory presumption is undercut or negated. *Reeves Brothers, Inc. v. U. S. Laminating Corp.*, 417 F.2d 869 (2d Cir. 1969). If, however, the prior art relied on by the defendant in attacking the validity of the patent is no more relevant than that cited and considered by the Patent Office, the presumption remains effective. *Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp.*, 372 F.2d 263 (2d Cir. 1967). If the statutory presumption remains effective, "the dispositive question is whether the presumption of validity has been rebutted." *Champion Spark Plug Co. v. Gyromat Corp.*, 603 F.2d 361, 367 (2d Cir. 1979).

Defendant contends that the most pertinent prior art is Patent No. 1,632,249, issued on June 14, 1927 to W. J. Steenrod ("Steenrod Patent"), which is Tab D of defendant's exhibit B. This patent was not cited by the Patent Office.

Plaintiff contends that the prior art cited by the Patent Office was at least as pertinent as the Steenrod Patent. In particular, plaintiff points to Patent No. 2,815,971, issued on December 10, 1957, to J.P. Guinane ("Guinane Patent"). The Guinane Patent, which like the 280 Patent and the Steenrod Patent, uses a ball-clutch mechanism designed to prevent unauthorized opening, cites the Steenrod Patent. The citation of the Steenrod Patent in the Guinane Patent, however, does not excuse the failure to cite the Steenrod Patent in the 280 Patent if, as this Court finds to be the case, the Steenrod Patent would have been the best reference for the 280 Patent.

The testimony at trial and a comparison of the patents themselves indicate that the Steenrod Patent is a better reference than any of the patents cited in the 280 Patent. As demonstrated by defendant's expert at trial, every element of claim 1 of the 280 Patent is found in the Steenrod Patent.

█ The failure to cite the most relevant prior art weakens the presumption of validity as applied to claim 1. *Formal Fashions, Inc. v. Braiman Bows, Inc.*, 369 F.2d 536, 539 (2d Cir. 1966).

Because claim 4 is identical to claim 1, except that in claim 4 the clip is designed to be used with two retaining balls instead of three, the discussion of the presumption of validity with respect to claim 1 applies to claim 4 as well. Both Guinane and Steenrod involve three ball mechanisms, and, thus, the fact that Steenrod is a better reference than Guinane with respect to claim 1 makes it a better reference with respect to claim 4 as well. Although two of the references cited by the Patent Office, the Moberg Patent (Defendant's Exhibit A, Tab 7) and the Phinney Patent (Defendant's Exhibit 2, Tab 2), involve ball-clutch mechanisms with two balls, these patents, when viewed as a whole, resemble claim 4 less than either Steenrod or Guinane. Thus, the presumption of validity is undercut with respect to claim 4 as well.

With respect to claim 3 in which the fastener in claim 1 is constructed of magnetized material for actuation by a magnet, the presumption of validity is even more severely undercut by the failure of the Patent Office to consider any relevant prior art on the element claim 3 added to claim 1. None of the parties cited by the patent examiner were for fasteners which were designed for actuation by a magnet. Of the prior art relied on by defendant, the Kitscha Patent (Exhibit B, Tab J), and Lury Patent (Exhibit B, Tab L), and the DeBruin Patent (Exhibit B, Tab M) show ball-clutch mechanisms which are releasable by magnet. The *Popular Science* article (Exhibit B, Tab II–A) discussed by defendant's expert at Tr. 379, which involved a lock actuated by a magnet designed to prevent the unauthorized opening of a drawer, is a further example of relevant prior art not considered by the examiner. Because the prior art cited by defendant is much more relevant to claim 3 than that cited and considered by the Patent Office, the statutory presumption is severely undercut as to claim 3. *Reeves Brothers, Inc. v. U. S. Laminating Corp., supra.*

## OBVIOUSNESS

The test for determining obviousness is set forth in *Graham v. John Deere Co.*, 383

U.S. 1, 17–18, 86 S.Ct. 684, 694 15 L.Ed.2d 545 (1966):

"[T]he scope and content of the prior art . . . and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is to be determined. Such secondary considerations as commercial success, long-felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or non-obviousness, these inquiries may have relevancy."

## PRIOR ART

In order to evaluate the obviousness of the patent in suit, it is first necessary to determine the scope of the prior art. Plaintiffs contend that the field of prior art against which the patent in suit must be judged is fasteners to secure theft prevention tags. Defendant contends that the field of prior art against which the patent must be judged is fasteners or locks in general. This Court agrees with defendant.

The 280 Patent is entitled "Fastening Clip." It was classified by the Patent Office in Class 24, which plaintiffs' expert classified as the basic fastener class (Tr. at 229). Neither the abstract of the patent, the summary of the invention, or the actual claims describe the patent as in any way limited to or intended for the theft detection industry. The only mention of this in the patent itself is in the one-paragraph introduction to the patent in col. 1, where it states at the end of the paragraph that "[a] specific use is for purposes of anti-theft detection in department stores and the like where the identification tag must be removed from the article purchased during the check-out process. If a person attempts to surreptitiously remove the article from the store without purchasing the same, the identification tag can be designed to actuate an alarm system."

Because the "scope of protection granted by a patent is defined by the language of its claims rather than by its title, specifications, exhibits or by the commercial embodiments of the claimed invention," *Maclaren v. B. J. W. Group, Inc.*, 535 F.2d 1367, 1372 (2d Cir. 1976), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 531, 50 L.Ed.2d 612 (1977), and the claims of the 280 Patent are not limited to the theft-detection industry, the proper field of prior art must be considered to be fasteners in general, *id*; *Digitronics Corp. v. New York Racing Association*, 553 F.2d 740 (2d Cir.). *cert. denied*, 434 U.S. 860, 98 S.Ct. 187, 54 L.Ed.2d 133 (1977). *See Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 149, 71 S.Ct. 127, 128, 95 L.Ed. 162 (1930).

Against the prior art of fasteners in general, the claims of the 280 Patent are obvious. Martin Martens did nothing that would not be obvious to the average person skilled in the art of fasteners presented with the same problem. The use of a ball-clutch mechanism when seeking to create a fastener that cannot readily be opened without the use of a separate device was obvious as witnessed by Steenrod and Guinane. The difference in structure between the 280 Patent and the prior art is minor. The testimony at trial as well as a comparison between the two patents indicates that the 280 Patent claims are virtually duplicated in the Steenrod fastener (Tr. at 367). The relevant major differences between the 280 Patent appear to be that the axial bore in the 280 Patent extends entirely through the ball carrier while in Steenrod, it does not (Tr. at 430–443). Steenrod uses a post to penetrate the material to be bound while the 280 Patent uses a pointed pin, and in Steenrod the outer tube, which is similar to the cylindrical housing of the 280 Patent, and the post are permanently bound to the looseleaf binder and penetrate the pages that are to be bound. Yet, all of these differences between Steenrod and the 280 Patent would have been obvious to one reasonably skilled in the art who wished to adapt a Steenrod-type fastener to the situation for which the 280 Patent was intended. Extending the axial bore was an obvious

way to accommodate a longer post. Using a pointed pin instead of a post was an obvious change to bind non-prepunched material which could be penetrated by such a pin. In the 280 Patent the looseleaf binder to which the post was attached is functionally equivalent to the head of the pin which prevents removal of the item bound. The different positioning of the outer tube in Steenrod and the cylindrical housing in the 280 Patent is also an obvious accommodation to the different purpose to which the 280 ball-clutch fastener was designed to be used.

■ Plaintiffs also rely on the differences in the mechanisms for unlocking the 280 Patent and the Steenrod Patent. Because the patent sued on is limited to the fastener itself and does not include either the device for unlocking it or the combination of fastener and tool for unlocking it, these differences are not relevant to a determination of obviousness. *See Maclaren v. B. J. W., supra.*

Although this Court does not consider the question of obviousness in the present case sufficiently close to require reference to the secondary considerations of commercial success, long-felt but unsolved needs, and failure of others, resort to such considerations would not weaken a finding of obviousness. This is not a case of simple solution to a serious problem which remains unsolved for many years and which achieves immediate commercial success. *See Goodyear Tire & Rubber Co. v. Ray-O-Vac*, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944). In the present case it was the problem, not the solution, which was new. The anti-theft device industry was a new one, and the dissatisfaction with the prior fasteners, even newer. When presented with the problem, Martin Martens perceived the solution with little effort. Anyone skilled in the art of fasteners could easily have done the same.

■ Although the use of magnetizable material to allow actuation by a magnet contained in claim 3 must be considered separately, it, too, was an obvious solution once the appropriate problem was posed.

The use of magnets to actuate ball-clutch mechanisms or locks was well known. The mere application of a known device to a new field is not patentable. *Exer-Genie, Inc. v. McDonald*, 453 F.2d 132 (9th Cir. 1971). *See Zoomar, Inc. v. Paillard Products*, 258 F.2d 527, 529 (2d Cir. 1958). The use of a magnetizable element to create a ball-clutch fastener which could only be opened by a separate magnet would have been obvious to one skilled in the art.

Claim 4 differs from claim 1 only in the use of two balls instead of three. This difference has no bearing on obviousness. The use of two balls instead of three in ball-clutch mechanisms was common in the prior art. *See, e. g.*, Morse Patent, defendants' exhibit B, Tab I E.

## BEST MODE

■ In order for a patent to be valid, the specification must set forth "the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. The evidence at trial showed that, by the date of filing of the application for the 280 Patent, I.D. had determined that the high-collar fastener was not the best mode for carrying out Martin Martens' invention, but that the second generation low-collar fastener, which was entirely enclosed and operable only by a magnet, was. Were the patent not already invalid for obviousness, this failure to disclose the best mode for carrying out the invention would invalidate the patent. *Trans-World Display Corp. v. Mechtronics Corp.*, 437 F.Supp. 692, 701–02 (S.D.N.Y.1977).

Plaintiffs contend that Martin Martens need not have, and indeed could not have, disclosed the second generation fastener because he was not the sole inventor of it, but rather, his brother and Jan Vandebunt were. This argument must be rejected. A patent is invalid for failure to disclose the best mode if at the time the patent is filed a better method to practice invention exists, and the inventor knows about it. "[I]f [the inventor] knows at the time the application is filed, of a better method to practice the

invention and knows it for the best, it would make no difference whether or not he was the discoverer of that method." *Benger Laboratories, Inc. v. R. K. Larus Co.*, 209 F.Supp. 639, 644 (E.D.Pa.1962), aff'd 317 F.2d 455 (3d Cir. 1963). Martin Martens would have been excused from revealing the second generation fastener as the best mode only if it were not within the scope of the claims of the 280 Patent. If the second generation fastener were outside the scope of the 280 Patent, then the Knogo fastener, which differed from the second generation fastener only insignificantly (Tr. at 52–53), would be outside the scope of the 280 Patent as well, and there would be no infringement.

## INFRINGEMENT

Because the Court has determined that the 280 Patent is invalid, it need not consider whether the patent is infringed by the defendant's fastener. An invalid patent cannot be infringed. *John Deere Co. v. Graham*, 333 F.2d 529, 530 (8th Cir. 1964), *aff'd*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

## ATTORNEYS' FEES

The statutory authorization for attorneys' fees is found in 35 U.S.C. § 285 which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The award of attorneys' fees is discretionary and should be use sparingly. *Larchmont Engineering, Inc. v. Toggenburg Ski Center, Inc.*, 444 F.2d 490 (2d Cir. 1971). This Court does not consider this case sufficiently exceptional to merit the awarding of attorneys' fees.

For the foregoing reasons the defendant is entitled to judgment dismissing the complaint and on its counterclaim seeking a declaration of invalidity of the 280 Patent.

The Clerk is directed to enter judgment in accordance with this decision and to mail a copy of the within to all counsel.

SO ORDERED.