**ASHLAND OIL, INC.,**
**Plaintiff-Appellant,**

v.

**DELTA OIL PRODUCTS CORPORA-**
**TION, Defendant-Appellee.**

**No. 81–1895.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1981.

Decided June 7, 1982 *.

Rehearing and Rehearing En Banc
Denied Oct. 5, 1982.

---

* This appeal was originally decided by an unpublished order on June 7, 1982 pursuant to

Circuit Rule 35. The court has subsequently decided to issue that decision as an opinion.

Bruce Tittel, Wood, Herron & Evans, Cincinnati, Ohio, for plaintiff-appellant.

Donald E. Egan, Chicago, Ill., for defendant-appellee.

Before SPRECHER ** and BAUER, Circuit Judges, and ROSZKOWSKI,*** District Judge.

** Judge Sprecher read the briefs, heard the oral arguments, and participated in the conference thereafter, but passed away before the decision was prepared.

PER CURIAM.

Before the court is an appeal from the decision of the United States District Court for the Eastern District of Wisconsin which invalidated two of the plaintiff's United States Letter Patents. With one exception, this court adopts the memorandum opinion of the district court in its entirety. The decision below is therefore affirmed in part and reversed in part.

The plaintiff, Ashland Oil, manufactures and sells chemical products to foundries through its Chemical Division. The defendant, Delta Resins & Refractories, formerly known as Delta Oil Products Corporation, also manufactures and sells foundry products. The parties dispute centers upon their respective chemical binders which, when mixed with sand, form a mold into which molten steel is poured to form a casting. The plaintiff alleged, at trial, that Delta's "Quick Set" chemical binder and "Cold Box" process infringes Ashland's United States Letter Patent No. 3,409,579 ('579 patent) issued on November 5, 1968 and Ashland's United States Letter Patent No. 3,676,392 ('392 patent) issued on July 11, 1972. The trial court below held that Ashland's patents were invalid and therefore unenforceable against the defendant. The pertinent facts are as follows.

In the foundry industry, chemical compositions called "chemical binders" are mixed with sand. The resulting mixture is then compacted around a pattern, and then removed from the pattern. The form or shape removed is a mold into which molten steel is poured. After the molten steel solidifies, the sand mold must break down to permit the sand to be shaken out of the casting. Finished foundry castings can be seen as door handles, cylinder bores in automobile engines, and the like.

A desirable chemical binder for the industry would possess the following attributes when mixed with sand: quick curing, curable without heat, able to provide high di-

*** The Honorable Stanley J. Roszkowski, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

mensional tolerances, strength sufficient to avoid deforming when molten steel is poured into it, and a break down time which occurs quickly after, and only after, the casting has solidified.

As the trial court's opinion explains in detail, five binder processes were generally used in the industry prior to the early 1960's. Each had its advantages and disadvantages. No one process was able to incorporate all the features the foundry industry desired.

In 1965, the Archer Daniels Midland Company, predecessor to Ashland's Chemical Division, hired Dr. Janis Robins to develop a binder system that would cure quickly at room temperature. The research that began in 1965 eventually led to three patents.

Dr. Robins early work led to the discovery of the polybenzylic ether resin which became known as the "pep resin." The pep resin was the subject of Ashland's first patent, U.S. Patent No. 3,485,797 (the '797 patent). The '797 patent was not at issue in this suit.

In the latter part of 1965, Dr. Robins invented a binder process called the "Isocure" process. The Isocure invention was later patented in 1968 under U.S. Patent No. 3,409,579 (the '579 patent).

The Isocure process became a huge commercial success. Plaintiff Ashland Oil's annual worldwide sales of Isocure ran approximately sixty million pounds by 1979. Isocure's success was due to its quick set, ability to cure without heat, and the hard smooth core surfaces it produced.

After discovering the Isocure binder system, Dr. Robins continued his work and developed what has become known in the trade as the Pep Set. The Pep Set invention was patented in 1972 under U.S. Patent No. 3,676,392 (the '392 patent). The Pep Set binder system includes a curing agent, a polyisocyanate, and a soluble resole

resin or a Pep Resin. The Pep Set binder system, which also cures without heat, has a primary advantage of curing almost instantly. Pep Set, like the Isocure process, also became a huge commercial success.

The defendant, Delta Oil, competes in the foundry binder market. In the Fall of 1975, Delta introduced its Quick Set and Cold Box binder systems to compete with Ashland's Pep Set and Isocure, respectively.

On February 23, 1976, Ashland Oil filed this suit against Delta Oil alleging infringement of the Robins '579 and '392 patents. Specifically, Ashland has accused Delta of infringing Claims 1 and 13 of the '579 patent and Claims 1 and 16 of the '392 patent through Delta's manufacture and sale of its "Quick Set" foundry binder system. Ashland also accused Delta of infringing Claims 1, 13, 15, 16 and 18 of the '579 patent through its manufacture and sale of its Delta "Cold Box" process.

Delta affirmatively defended by alleging that Ashland's patent claims were invalid for obviousness under 35 U.S.C. § 103. In addition, Delta claimed that the '392 patent was invalid for double patenting.

The district court conducted an eight day bench trial from October 29, 1980 through November 7, 1980. The Court entered its decision and order on March 26, 1981. The Court held all of the patent claims were invalid for obviousness and that all of the claims of the '392 patent were invalid for double patenting.

Ashland now appeals from that decision. Although Ashland presents numerous grounds for appeal, Ashland's primary emphasis is on three arguments.

 First, Ashland argues that the district court erred when it failed to consider the huge commercial success of plaintiff's inventions when it held that the inventions were obvious under 35 U.S.C. § 103.[1] The United States Supreme Court, in *Graham v.*

1. A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. 35 U.S.C. § 103.

*John Deere*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), set forth the three major factors to be addressed when resolving a § 103 claim of obviousness.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

The Court also held that other secondary factors may also be considered.

> Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., *might* be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Id.* (Emphasis supplied).

This Court has held that the secondary considerations in *Graham* may be weighed "[o]nly in a *close case*, in which application of the primary criteria of nonobviousness under section 103 does not produce a firm conclusion." *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 975–76 (7th Cir. 1979) (emphasis supplied).

In the present case, the district court held that "the 'primary criteria of obviousness' warrant a finding of obviousness" and stated further that the court does "not believe this a close enough case to warrant the weighing of secondary considerations." (Memorandum Opinion at 16–17). The district court's refusal to consider or weigh secondary considerations was therefore a proper application of our holding in *Republic Industries, supra*, and we find no error.

■ Second, Ashland contends the district court erred when it gave greater weight to the testimony of Delta's expert, Dr. Wendland, than it gave to Ashland's experts Drs. Frisch and Schafer. Ashland claims that Dr. Wendland was not an expert in polyurethane chemistry and had no foundry experience. On the other hand, Drs. Schafer and Frisch were experts in both areas and both testified that the inventions were unobvious.

This court finds no error in the district court's reliance on Dr. Wendland. He has his doctorate in chemistry, taught the subject at the collegiate level for over fifteen years, and has authored over a dozen technical publications in the area. Moreover, Ashland did not object at trial to Dr. Wendland's qualifications as an expert. The court was therefore well within its discretion to consider and rely upon the testimony of Dr. Wendland.

■ Third, Ashland contends the district court erred when it invalidated all 17 claims of the '392 patent for double patenting. This court agrees. A review of the record shows that only claims 1 and 16 of the '392 patent were placed in issue before the District Court. This Circuit, as well as others, have held that it is error to invalidate all of a patent's claims when only a number of the patent's claims are actually litigated before the court. *See Laufenberg, Inc. v. Goldblatt Bros.*, 179 F.2d 832 (7th Cir. 1950); *Palmer v. Orthokinetics, Inc.*, 611 F.2d 316 (9th Cir. 1980); *Westwood Chemical Inc. v. Owens-Corning Fiberglass Corp.*, 445 F.2d 911 (6th Cir. 1971), *cert. denied*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972). Accordingly, the portion of the district court's opinion invalidating claims 2–15 and 17 of the '392 patent is hereby reversed.

This court has reviewed the various other grounds raised by the Appellant and finds them to be without merit.

The district court is therefore affirmed in part and reversed in part.