**UNION CARBIDE CORPORATION,**
Plaintiff,

v.

**AMERICAN CAN COMPANY,**
Defendant.

No. 82 C 4884.

United States District Court,
N.D. of Illinois, E.D.

March 3, 1983.

---

R. Lawrence Storms, Winston & Strawn, Chicago, Ill., Douglas W. Wyatt, Thomas A. O'Rourke, Wyatt, Gerber, Shoup, Scobey & Badie, New York City, Stuart S. Bowie, American Can Co., Greenwich, Conn., for plaintiff.

Michael O. Warnecke, Michael D. McCoy, William H. Frankel, Neuman, Williams, Anderson & Olson, Chicago, Ill., Thomas I. O'Brien, John C. LeFever, Union Carbide Corp., Danbury, Conn., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This is a patent infringement action by plaintiff Union Carbide Corporation ("Union Carbide") against defendant American Can Company ("American Can"), alleging infringement of United States Letters Patent Nos. 4,262,803 and 4,277,930. Defendant has challenged the validity of the patents as well as denying infringement. For brevity's sake, we will refer to the patents in question as the "803" patent and the "930" patent, respectively. Plaintiff has moved for summary judgment on the issue of infringement; defendant has moved for summary judgment on the issue of validity.

The 803 patent covers a package of wicket-holed, flattened plastic bags (or sheets), of the type customarily used in meat packaging operations. The bags are secured into a bundle by a flexible binding member which serves as a handle for transporting the bags, and which is convertible (by severing it in the middle of the loop) into a bag-dispensing wicket arrangement. The bag package "provides a simple, but effective, solution to the problems inherent in the packaging, handling, shipping, unpacking, mounting and dispensing of these large, heavy bags." Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment on Infringement at 2. The 803 patent covers nine claims. Seven of the claims are dependent on the main claim, which is essentially as described above, and simply describe the types of materials used for the binding member and the means used to maintain the ends of the binding member. Claim 9 is identical to claim 1 but concerns the use of the system to bind bags rather than sheets.

The 930 patent covers the process of using the 803 device for successive packaging and dispensing of individual bags or sheets. The process patent comprises the steps of providing a stack of flattened flexible packaging bags or sheets held assembled on a flexible binding member; mounting the stack on a sheet-dispensing wicket base arranged to secure the shank portions (ends) of the binding member; severing the binding member at a point of the hand-grippable loop, thereby forming upwardly extending free-ended flexible wicket elements; and removing the packaging sheets or bags over the severed ends of the binding member without the need to tear them off. Diagrams of the 803 and 930 patents appear at Appendices A and B of this opinion, respectively.

## VALIDITY OF THE 803 AND 930 PATENTS.

Union Carbide's applications for the patents in suit were first filed in October 1974. They were rejected as obvious on that occasion as well as on two subsequent refilings. On its fourth attempt, Union Carbide separated the two applications. The 803 patent was granted in April 1981. Even on this ultimately successful attempt, however, the

803 application was initially rejected for obviousness in light of prior art. *See* Defendant's Motion for Summary Judgment, Appendix E (file wrapper of fourth application for 803 patent). The examiner cited several prior art references and noted that because the basic design of the binding member was disclosed by the prior art, it would be "obvious to make the binding member ... in a [sic] form of a plastic tube." *Id.* The examiner also stated that "any binding is capable to be severable [sic]," thus indicating the obviousness of that feature of the invention. *Id.* Union Carbide's response to the examiner's action focused on two elements of the design: the elongation of the binding member to form a handle, and the severability of the binding member to form upward-extending wickets to permit removal of the sheets or bags. *Id.* (see "Amendment-Response," dated September 21, 1979, at 5–5a). The claim was again rejected. The examiner stated:

> Applicant tried to rely on the functional statement of "binding being severable" for patentability. However, it should be noted there is no structure in the claim which is distinguishable over the combined teaching.

Union Carbide then appealed to the Patent Office's Board of Appeals. The patent application was granted, however, by the original examiner, in April 1981. The notice of allowance was accompanied by a "Statement of Reasons for Allowance." It stated that "[c]laims 1–9 are allowable solely basing [sic] on the limitation of 'when severed, forming upwardly extending free-ended flexible wicket.'"[1] *See id.* The 930 patent was granted in July 1981 after amendment of the application to reflect more clearly the feature of severability into erect wickets. *See* Defendant's Motion for Summary Judgment, Appendix F (file wrapper for 930 patent).

An invention is construed not only in light of the patentee's claims, but also with reference to the prosecution history in the Patent Office. *Graham v. John Deere & Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 701–02, 15 L.Ed.2d 545 (1966) (citing cases). In the present case the 803 patent was granted solely on the basis of the feature that when the binding member was severed, the severed ends formed upwardly extending free-ended flexible wickets. The subject matter of the patent as a whole, therefore, reduces to that distinguishing feature, and our consideration of the validity of the 803 patent is thus limited to that feature. *Id.* at 33–34, 86 S.Ct. at 701–02; *see also Burland v. Trippe Manufacturing Co.,* 543 F.2d 588, 591–92 (7th Cir.1976).

In support of its motion for summary judgment, defendant has relied primarily upon cases decided by the Court of Appeals for the Seventh Circuit. As plaintiff correctly notes, however, effective October 1, 1982, the newly established Court of Appeals for the Federal Circuit has exclusive jurisdiction of appeals in all patent infringement cases. 28 U.S.C. § 1292(c)(2) (West Supp.1982) The controlling law in this action is, therefore, that of the Federal Circuit, which was formed through a merger of the former Court of Customs and Patent Appeals and the Court of Claims. The new court has declared that all decisions of the predecessor courts rendered before the close of business September 30, 1982 will be considered binding. *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982). Therefore, where the Supreme Court has not spoken to an issue, we must look to decisions of the Federal Circuit and the former Court of Customs and Patent Appeals for guidance.

---

1. Plaintiff states that defendant's assertion that the 803 claims were allowed only because of this limitation "is a misstatement of the prosecution history." *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on Invalidity at 9–10. Plaintiff has not disputed, however, that the Statement of Reasons quoted above applies to the 803

patent, nor has it contested any of the documents presented to us by defendant as the prosecution histories of the various applications. Its characterization of defendant's assertion as a misstatement flies in the face of the clear language of the documentary evidence now before us.

Our review of the law indicates that the Court of Customs and Patent Appeals takes a somewhat stricter view of a defendant's burden of proving the obviousness of a patented device than did the Seventh Circuit. The law of this circuit has been that the presumption of validity that a patent normally carries, 35 U.S.C. § 282 (1976), does not apply where relevant prior art was not before the Patent Office when it granted the application. *See Pate Co. v. RPS Corp.,* 685 F.2d 1019, 1023 (7th Cir.1982); *Mooney v. Brunswick Corp.,* 663 F.2d 724, 732 (7th Cir.1981). The Court of Customs and Patent Appeals squarely rejected this view, however. *Solder Removal Co. v. International Trade Commission,* 582 F.2d 628, 632–34 (C.C.P.A.1978). In *Solder Removal,* that court held that the burden of persuasion on invalidity remains at all times on the party asserting invalidity, although that burden may be carried more easily by evidence consisting of more pertinent prior art than that considered by the examiner. *Id.* at 633–34.

Under 35 U.S.C. § 103 (1976), a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." While the ultimate determination of obviousness is an issue of law, *Graham,* 383 U.S. at 17, 86 S.Ct. at 693–94, § 103 lends itself to three basic factual inquiries: the scope and content of the prior art; the differences between the prior art and the claims at issue; and the level of ordinary skill in the pertinent art. *Id.* *Graham* also made reference to certain "secondary considerations" such as commercial success of the invention, the fulfillment of long felt but unsolved needs, and the failure of others, which it stated "might have relevancy" as indicia of obviousness or nonobviousness. *Id.* at 17–18, 86 S.Ct. at 693–94.

Defendant argues that the prior art references it has cited (*see* discussion *infra*) disclose the feature of severability of the binding member into erect wickets, the feature to which the examiner's granting of the 803 application was limited. Plaintiff responds that these references come from an art different from that practiced by the inventor and thus are not pertinent, and that in any case defendant's references do not disclose the combination of features included in the patents in suit. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on Invalidity at 15–25. Plaintiff also argues that expert testimony is required to resolve these questions and therefore submits the affidavit of its expert, Mr. Don A. Fischer.[2] Defendant rebuts the latter contention by arguing that where, as here, the invention is not highly technical in nature, expert testimony is not needed to make the comparison with the prior art.

Plaintiff also relies on two "secondary factors" enumerated in *Graham* to support its claim of nonobviousness. It contends that the device and process in question have enjoyed huge commercial success and have satisfied a long-felt need in the meat packaging industry. It has supported these assertions with affidavits. *See* Affidavits of George E. Bailie (commercial success), Edward Lee Arnstad, and Chester S. Ostrowsky (long-felt need). This evidence is unrebutted by defendant, which argues that we need not consider it. Defendant relies upon Seventh Circuit decisions that hold that commercial success and other secondary factors of non-obviousness serve only to tip the scales in favor of patentability in close cases. *See Ashland Oil, Inc. v. Delta Oil Products Corp.,* 685 F.2d 175, 178 (7th Cir.1982) (per curiam); *Republic Industries, Inc. v. Schlage Lock Co.,* 592 F.2d 963, 972–73 (7th Cir.1979). Plaintiff, relying on the more pertinent Federal Circuit law, argues that secondary factors must be considered in all cases. In *Stevenson v. Inter-*

---

**2.** Defendant did not submit any affidavits of experts or other witnesses. It submitted only the prior art references on which it relies, ap-

parently relying on us to make the determination of relevance and the comparison with the patents in suit.

*national Trade Commission,* 612 F.2d 546, 553 (C.C.P.A.1979), the court rejected the view that secondary factors serve only to tip the scales in close cases:

> [t]he inference of obviousness drawn from prior art disclosures is only prima facie justification for drawing the ultimate legal conclusions that the claimed invention is obvious under 35 U.S.C. § 103. Therefore, it is necessary that such secondary considerations also be evaluated in determining the final validity of that legal conclusion. As presented in [*Graham*], such secondary considerations may serve to "guard against slipping into hindsight" and "to resist the temptation to read into the prior art the teachings of the invention in issue."

While evidence of commercial success should give a court pause before holding a patent invalid for obviousness, the Supreme Court, we believe, has spoken authoritatively on this issue. Fulfillment of long-felt want and commercial success "without invention will not make patentability." *Anderson's-Black Rock Inc. v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969) (quoting *Atlantic & Pacific Tea Co. v. Supermarket Corp.,* 340 U.S. 147, 153, 71 S.Ct. 127, 130–31, 95 L.Ed. 162 (1950)).[3] We turn, therefore, to the primary factors set forth in *Graham.*

The first question is the scope and content of the prior art. Defendant has called to our attention several patents that preceded the 803 and 930 patents but that were not cited by the examiner who granted the applications. The first set of prior art references claimed by defendant to be relevant includes the Chamberlin,[4] Sutcliffe, Aikin, and Stebbings[5] patents. Chamberlin consists of flexible wicket elements that can be separated to allow removal of one sheet of the bound material at a time. It does not allow for carrying the bundle by means of the binding member. The patentee's summary of the invention states that its object is "to obtain a simplified binder and fastener of low cost ... and of simple and easy operation." It also notes that the device may be used with "regular paper, *plastic sheets,* cardboard, or the like" (emphasis supplied). Sutcliffe was a patent for a display and index rack. The materials (display cards) to be displayed are secured by a guide rod that appears to be a continuous loop but that actually consists of two sections that are separable in order to aid in adding or removing cards from the rack. Aikin covered a "bill file." It is formed by a "spring rod" in the shape of a loop. In order to add or remove bills, the loop is separated at its break point, and the upper section is swung upward. Stebbings is substantially similar to Aikin. It was cited by the examiner who allowed the 930 process application but not by the examiner who allowed the 803 article application. These patents disclose the feature of a binding member that is separable to allow for addition or removal of items.

The second set of prior art references cited by defendant includes the Roberts and Hunt patents. Roberts discloses a stack of paper bags held on a piece of string passing through a hole punched through them. It relates to a means for suspending a batch of bags so that they may be torn off singly for use. Hunt is nearly identical to Roberts. These patents are cited by defendant, we take it, for the carrying loop feature.

As we have noted, plaintiff argues that these references are not pertinent prior art, because they are from an "art" not analogous to that practiced by the inventor(s) of the 803 device. Plaintiff seems to argue that the "art" in question concerns the dispensing of flexible bags and bagging means. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on Invalidity at 18. Through this amazingly restrictive characterization

---

**3.** Neither *Anderson's* nor *Atlantic & Pacific* was cited in *Stevenson.*

**4.** This Chamberlin patent, no. 3,822,950, is a different "Chamberlin" than no. 3,261,066, which the examiner did cite.

**5.** Stebbings was cited by the examiner who granted 803 but not by the examiner who granted 930.

of the inventor's art, plaintiff concludes that defendant's references are not relevant prior art.

Plaintiff supports its view with an affidavit from Don A. Fischer ("Fischer Aff."), an engineer and former patent attorney. Since the end of World War II, Fischer has testified in approximately 90 patent cases and has been retained in numerous others that did not proceed to trial. Fischer Aff. ¶ 10. Applications of engineering principles on which Fischer has testified include the manufacture of plastic recloseable bags for packaging articles; conveyor for heat shrinking of plastic film on food articles; box making machinery; transformer stacking and winding machines; automatic sod gathering machinery; sand and gravel handling separating machinery; and weaving machinery. *Id.* Fischer also taught engineering on the university level for over 20 years. His teaching experience was primarily in electrical and industrial engineering. *Id.* ¶¶ 5–7. Fischer describes his expertise as being mainly in the fields of mechanical and electrical engineering. *Id.* ¶ 9. He also stated that he has acted as "a patent expert in the area of packaging equipment involving apparatus for the bagging of fresh red meat using plastic bags." *Id.* ¶ 10. In preparing for the present case, Mr. Fischer reviewed the prior art cited by the Patent Office and by defendant and visited a "beef fabrication plant"[6] where he observed the operation and use of plaintiff's system for dispensing bags.[7] *Id.* ¶ 11.

Much of the Fischer affidavit is devoted to an attempt to explain why the prior art cited by defendant does not render the 803 device and the 930 method obvious. That much of the affidavit is not relevant to the

first inquiry under *Graham.* Fischer also asserts, however, that Chamberlin, Sutcliffe, Aikin, Stebbings, and Beachum (another prior art reference cited by defendant) are concerned with "displaying and retaining" and not with "dispensing." Fischer Aff. ¶ 20. He states that "[a] man [or woman] skilled in the packaging art would not look to the bill filing and fastener arts to solve the problem of dispensing slipperly [sic] flexible packaging bags." *Id.*[8]

■ In deciding whether given prior art is relevant to a determination of obviousness, one must first determine the nature of the problem addressed by the invention. "The prior art that is relevant in evaluating a claim of obviousness is defined by the nature of the problem confronting the would-be inventor." *In re Mlot-Fijalkowski,* 676 F.2d 666, 670 (C.C.P.A.1982) (quoting *Republic Industries, Inc. v. Schlage Lock Co.,* 592 F.2d 963, 975 (7th Cir.1979)).

In resolving the question of obviousness under 35 U.S.C. § 103, we presume full knowledge by the inventor of all the prior art in the field of his endeavor. However, with regard to prior art outside the field of his endeavor, we only presume knowledge from those arts reasonably pertinent to the particular problem with which the inventor was involved. The rationale behind this rule precluding rejections based on combination of teachings from references from non-analogous arts is the realization that an inventor could not possibly be aware of every teaching in every art. Thus, we attempt to more closely approximate the reality of the circumstances surrounding the mak-

---

**6.** A "beef fabrication plant" must be an interesting place. We had always thought that beef was "fabricated" by Mother Nature. We assume, however, that Mr. Fischer meant to refer to what is commonly known as a meat packing plant. Perhaps this confusion illustrates the wisdom behind Beardsley's Warning to Lawyers: "Beware of and eschew pompous prolixity." *See* P. Dickson, The Official Rules 11 (1978).

**7.** We are unsure whether plaintiff's "system for dispensing bags" refers to the 803 device and the 930 process or to the entire system employed for bagging meat. *See* Affidavit of George A. Bailie, Exs. A–C (the "Perflex Packaging System").

**8.** Fischer does not conclude that Roberts and Hunt are in unrelated arts. Rather, his only contention with respect to those patents is that they do not render 803 obvious. Fischer Aff. ¶ 19.

ing of an invention by only presuming knowledge by the inventor of prior art in the field of his endeavor and in analogous arts.

The determination that a reference is from a nonanalogous art is therefore two-fold. First, we decide if the reference is within the field of the inventor's endeavor. If it is not, we proceed to determine whether the reference is reasonably pertinent to the particular problem with which the inventor was involved.

*In re Wood,* 599 F.2d 1032, 1036 (C.C.P.A. 1979) (citation omitted), *quoted in In re Pagliaro,* 657 F.2d 1219, 1224 (C.C.P.A.1981).

We must confess that we find the "field of endeavor" question somewhat amorphous. Even assuming, however, that the prior art cited by defendant was outside the 803 inventor's field of endeavor, we find it reasonably pertinent to the problem with which the inventor was involved. To quote from the patent application:

The desiderata of flattened, stacked, wicket holed, slippery packaging bags *is that they be held bundled, with their wicket holds in registration, as a unitary package, during packing, shipping, unpacking, and installation at a packing station* . . .

Thus, one of the inventor's primary concerns was dealing with the problem of binding. Making the bound bags carryable was another prime concern:

The present invention . . . provides a unitary stack of wicket holed flexible plastic packaging bags wherein the flexible binding holding and assembly of bags is also utilized as a carrying handle.

Finally, dispensing the bags singly was a major aim of the 803 device:

Packaging operations in industry, particularly in the meat packing industry, involve the use of flexible plastic packaging sheets or bags held on wickets passing through wicket holes . . . *for one at a time removal* and utilization at a packing station.

We must keep in mind, however, that the 803 patent was issued limited to the feature of severability of the binding member to form erect wickets. In fashioning this feature, the inventor clearly was concerned with the problem of designing a means by which one bag could be dispensed at a time while the remaining bags would be held in place. Closely connected with this concern was the desire to avoid having to tear the bags to remove them. Thus, the problem faced by the inventor when he invented the part of the 803 device that was held by the Patent Office to be patentable did relate to the "art" of binding (or, otherwise stated, retaining) and that of dispensing, if that can be considered an "art" separate from binding.

We place little weight on Mr. Fischer's assertion that the relevant art is that of packaging. Packaging is, more properly speaking, the industrial context in which the 803 binder-dispenser is applied. If we were concerned with a patent on the bag in question, our frame of reference might very well be packaging. But when dealing with a device that holds together articles used in packaging, the relevant art is that which teaches a would-be inventor how to resolve problems connected with holding the articles together.

Moreover, Fischer's expertise lies primarily (if not entirely) in the field of mechanical and electrical engineering. His affidavit reveals that his testimony as a patent expert has been concerned with machinery and packaging equipment, neither of which are at issue here. The informal training which he has undergone in preparation for his expected testimony in the present case does not suffice to give him expertise as to the scope of the field of endeavor of the inventors of the patents in suit or as to what other fields are analogous. *See In re Deters,* 515 F.2d 1152, 1155 (C.C.P.A.1975) (if qualifications of expert fail to show that he or she is skilled in the relevant art, the expert's opinion carries no weight); *In re Altenpohl,* 500 F.2d 1151, 1158 (C.C.P.A. 1974) (lack of factual support for opinion renders expert's affidavit of little weight).

In short, we think that the Chamberlin, Sutcliffe, Aikin, and Stebbings patents, all of which relate to the art of binding/dispensing, are pertinent prior art here. The Fischer affidavit is insufficient to create a genuine issue of material fact on the question of the scope and content of the prior art. The evidence presented by defendant concerning the problem addressed by the inventor—contained mainly in the patent application and the prosecution history—establishes the scope and content of the prior art.[9]

The second inquiry under *Graham* involves comparison of the prior art with the claims at issue. Again, we must keep in mind that the 803 patent was limited by the Patent Office to the feature of severability of the binding member into erect, free-standing wickets. Before making the comparison, however, we will examine the most pertinent prior art reference that was cited by the examiner, the Million patent. Million concerned a means of binding and dispensing flexible bags similar to those used with the 803 device. Million used a wicket type fastener to hold the bags together; indeed, with the exception of the lack of a hand-grippable loop, the diagram of this part of Million appears identical to the 803 patent.[10] However, Million went on to disclose a means for securing the entire assembly to a fixed location so that bags could be torn from the wickets for use. The differences between the 803 patent and Million are that 803 permits one to carry the packet of bags and that it allows for removal of the bags without tearing, through the feature of severability of the binding member.

As we have noted, the prior art references cited by defendant disclose these features. Chamberlin, Sutcliffe, Aikin, and Stebbings employ a binding member that may be separated in the middle to allow for removal of the items bound. Roberts and Hunt, which plaintiff has not challenged as being pertinent prior art, employ a binding member in the form of a loop with which the bundle may be carried.[11] Under *In re Winslow,* 365 F.2d 1017, 1020 (C.C.P.A.1966), a combination of features shown by prior art references is legally obvious if it would have been obvious to "the inventor . . . working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him." The conjunction of known elements must in some way add something; "only when the whole . . . exceeds the sum of its parts is the accumulation of old devices patentable." *Atlantic & Pacific Tea Co. v. Supermarket Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). *See also Anderson's-Black Rock Inc. v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969).

Thus, the question we must address is whether adding the feature of severability of the loop (the feature to which the granting of the 803 application was limited) to the Million device for binding the bags would have been obvious to the inventor in light of Chamberlin and the other prior art patents. We may resolve this issue by answering the question posed by *Atlantic & Pacific:* does this additional feature add anything to the Million concept? The answer is clearly not. Even with the feature of erect free-standing wickets, 803 does no more than permit removal of the bags, one at a time. Million, however, also permitted removal of the bags one by one. The only

---

**9.** We note that the examiner apparently viewed the scope of the relevant art in a fashion similar to our holding on the question. Among the prior art references he cited were the other Chamberlin patent (No. 3,261,066), for a "flexible paper fastener," and Tarnoff, a patent for a display rack (*See* Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Ex. E).

**10.** Million's wicket was made from a rigid material and thus was not severable for dispensing

bags. Otherwise, however, its form and make-up is nearly identical to the 803 device. Perhaps this is why the examiner limited the granting of the 803 application to the feature of severability into erect wickets.

**11.** Though the specific use of the loop in Roberts and Hunt is for hanging the bundle of bags, the loop clearly may be used as a handle as well.

difference between the two is that with the 803 device, the bags are lifted off, while with Million, they are torn on the perforation. This difference seems to us to be insignificant; it does not address any of the "problems" or "felt needs" noted by the inventor of 803 in his application for the patent. Nor does it address any of the problems with alternative bag dispensing systems brought to our attention by plaintiff's affiants. Affiants Arnstad and Ostrowsky note the problems with meat bags on continuous sheets, formed into a roll, bags connected in a staggered fashion by tape, and bags dispensed in a fashion similar to facial tissue. *See* Arnstad Aff. ¶¶ 5–6; Ostrowsky Aff. ¶¶ 5–7. Affiant Bailie, president of plaintiff's Films-Packaging Division, notes that the problem which caused Union Carbide to become interested in developing an alternative bag-dispensing method was that the methods then in existence were either stacked loosely or were dispensed in such a way that it was difficult to avoid dispensing more than one bag at a time. Each of these problems was solved, albeit in a slightly different though hardly innovative way from the 803 device, by Million.[12]

Nor does the fact that the binding element in the 803 device is severable add anything to Million. This feature is significant merely as a means for getting to the feature of removability of the bags, one at a time. It is not an end in itself and thus adds nothing to the device beyond the advantage of removability, which Million also had.

We think that it is in a court's consideration of the differences between the prior art and the patent in suit—that is, the question whether the would-be inventor would have found the patented device obvious even if he had all the relevant prior art

hanging on the walls of his or her shop— that the factor of commercial success comes into play. Plaintiff presents persuasive evidence that its "wicketed Perflex 62 bags" have since their introduction in 1973 captured a significant portion of the market for fresh red meat bags. *See* Bailie Aff. ¶¶ 8–9. As the court noted in *Stevenson v. International Trade Commission,* 612 F.2d 546, 553 (C.C.P.A.1979), consideration of this factor helps us to guard against slipping into hindsight rather than viewing the question as would have the inventor at the time the patented device was developed. We think, however, that this case is not unlike *Atlantic & Pacific,* in which the Supreme Court stated: "[t]o bring these devices together and apply them ... was a good idea, but scores of progressive ideas in business are not patentable ...." 340 U.S. at 153, 71 S.Ct. at 130. *The 803 device added nothing of consequence to the Million patent, and what it did add, severability of the binding member, was an obvious modification, based upon the Chamberlin, Sutcliffe, Aikin, and Stebbings patents.* The carrying loop was not a feature upon which the Patent Office granted the application, and even if it had been, it was rendered obvious by Roberts and Hunt. There is no genuine issue of material fact on the question of obviousness. Defendant is entitled to summary judgment on the issue of invalidity.[13]

### INFRINGEMENT BY DEFENDANT

■ The law is clear that an invalid patent cannot be infringed. *E.g., Reinke Manufacturing Co., Inc. v. Sidney Manufacturing Corp.,* 594 F.2d 644, 645 (8th Cir.1979); *Cardinal of Adrian, Inc. v. Peerless Wood Products, Inc.,* 515 F.2d 534, 536 (6th Cir. 1975); *Ever-Wear, Inc. v. Wieboldt Stores,*

---

**12.** As for the fact that 803 permits carrying by means of the binding member, unlike Million, we note first that the granting of the patent application was not based upon this feature. Even if it had been, however, we think that under the *Winslow* test an inventor who had Million and Roberts or Hunt hanging on his walls would find combination of those inventions' salient features obvious.

**13.** What we have said about the 803 patent applies equally to the 930 method patent. The 930 method is based entirely upon the use of the 803 device, which, we have held, is not patentable. We do not see how a method based entirely upon the use of an unpatentable device can itself be patentable.

*Inc.,* 427 F.2d 373, 376 (7th Cir.1970); *Reynolds-Southwestern Corp. v. Dresser Industries, Inc.,* 372 F.2d 592, 595 (5th Cir.1967); *Wham-O Manufacturing Co. v. Paradise Manufacturing Co.,* 327 F.2d 748, 751 (9th Cir.1964); *Checkpoint Systems, Inc. v. Knogo Corp.,* 490 F.Supp. 116, 123 (E.D.N.Y. 1980). Thus, given our holding that defendant has overcome the presumption of validity of the patent and is entitled to summary judgment on the issue of invalidity, plaintiff's motion for summary judgment on the issue of infringement is rendered moot.

Defendant's motion for summary judgment on invalidity is granted; plaintiff's motion for summary judgment on infringement is denied as moot. Judgment will enter accordingly with costs to defendant.

APPENDIX A

**U.S. Patent**          Apr. 21, 1981          **4,262,803**

Fig. 1

Fig. 2

*Fig. 1*

*Fig. 2*

United States District Court,
S.D. New York.