[PHILADELPHIA, JANUARY 12th, 1835.]

## SWIFT *against* The UNION CANAL COMPANY of PENNSYLVANIA.

### IN ERROR.

An action was brought by a holder of "old stock" in the Union Canal Company of Pennsylvania, to recover the arrears of an annual interest of six per cent., arising from the avails and nett proceeds of the lottery pledged as a fund for the payment of said interest, by the 3d section of the " act supplementary to an act entitled, an act to incorporate the Union Canal Company of Pennsylvania," passed 29th March, 1819.

*Held*, that there was no debtor to be sued—no fund liable when the suit was brought, and that the plaintiff could not recover.

THIS was an action to recover the arrears of an annual interest of six per cent. due to the plaintiff, a citizen of the United States, on twenty-nine shares of what is commonly called "old stock," or as they are described in the act of 29th March, 1819, which were not forfeited in the late Delaware and Schuylkill, and Schuylkill and Susquehanna Canal Companies.

The cause was tried before ROGERS, J. at Nisi Prius, on the 5th December, 1831, and a verdict taken for the plaintiff generally, subject to the opinion of the court on the evidence.

The several acts of assembly touching the question, are so fully stated in the opinion of the court as to render it unnecessary here to repeat them.

The case was argued by *Read* and *Chauncey* for the plaintiff, and *Biddle* and *Sergeant* for the defendant.

The opinion of the court was delivered by

HUSTON, J.—This suit was brought by the plaintiff, who was one of the holders of what is called "old stock" in the Union Canal Company, to recover from the said company the arrears of an annual interest of six per cent., alleged by the plaintiff to be due at the time of commencing this suit.

To understand the nature of this claim, we must refer to several acts of assembly:—The first is dated the 29th of September, 1791, entitled "an act to incorporate a company for opening a canal and lock navigation between the rivers Schuylkill and Susquehanna," &c. &c., and in pursuance of it a company was organized, called the "President, Managers and Company of the Schuylkill and Susquehanna Navigation."

On the 10th of April, 1792, another act was passed, and in pursuance of it a company was incorporated under the name of "the

President, Managers and Company of the Delaware and Schuylkill Navigation."

It will not be necessary to examine the provisions of these acts, nor to do more than refer to the act of the 17th of April, 1796, authorizing each of these companies to raise a sum by way of lottery, to assist in carrying on the different works. Then followed the acts of the 7th of March, 1797—23d of March, 1802—1st of March, 1806—17th of March, 1806—4th of March, 1807—20th of March, 1810—all of which were repealed and supplied by the act of the 2d of April, 1811. This act was passed at the instance of the stockholders in the two before mentioned companies, who had by articles formed a joint stock, and by that act were incorporated under the name of " the Union Canal Company of Pennsylvania;" and under this name the company still exists and holds all its rights and privileges.

By this act, such citizens of the United States as were holders of stock, and had then completed the same, were to be holders of stock in the Union Canal Company; and the President and Managers were directed to issue and deliver to the said stockholders, two shares in the Union Canal Company, for each share in the Schuylkill and Susquehanna Company, and one share in the Union Canal Company for each share in the Delaware and Schuylkill Company. Provision was made for those who did not choose to accept shares in the Union Canal Company. Very little was done under any or all of these acts, and that little was totally useless to the world and the stockholders, because nothing was completed, and no funds or prospect of funds to go on with it; all operations had ceased. On the application of the stockholders, another act passed on the 29th of March, 1819, which after reciting the hopeless situation of the company, and the importance of the work, authorized commissioners to open books for the subscription of two thousand five hundred additional shares in the Union Canal Company, and pledged the proceeds of a lottery for the payment of an annual interest of six per cent. on all sums subscribed under this act, reckoning from the day of payment of each individual, and then proceeded to enact in the 3d section, " and whereas, it is just and right to put on the same footing the shares which were not forfeited in the late Delaware and Schuylkill, and Schuylkill and Susquehanna Canal Companies; it is hereby declared to be the intent of this act, that the holders of all such shares, as soon as two thousand five hundred shares shall have been subscribed under this act, shall be entitled to an annual interest, reckoning from the time of such subscription, in proportion of the payment made on subscribing by the new subscribers, and of the payment of their respective instalments as called for by the board of managers." At this time active proceedings on the canal had long ceased. It also provided for reorganizing the company, and all property purchased or held by either of the preceding companies

(Swift *v*. Union Canal Company.)

or by the Union Canal Campany, or which should be acquired by it, by lottery or otherwise, was to be vested in the old and new subscribers in common, in proportion to the shares of each.

No stock was taken under this act, and the situation of the old stockholders was not improved. It was not within their own power to improve it, and they again applied to the legislature, and on the 21st of March, 1821, was passed " an act for the improvement of the state." This provided that as soon as two thousand two hundred and fifty shares were subscribed under the act of 1819, the governor should subscribe two hundred and fifty shares on behalf of the state, and draw on the state treasurer for the instalments, in proportion as other subscribers paid on the calls to be made by the managers ; " and if the proceeds of the lottery granted to the Union Canal Company, together with the tolls which may be collected, shall not hereafter for the period of twenty-five years, yield a sum equal to an annual interest of six per cent. upon all sums not exceeding in amount four hundred and fifty thousand dollars, which may be subscribed by new subscribers as aforesaid, and paid according to law to the capital stock of said company, the governor shall from year to year for the term of twenty-five years, whenever it shall appear to his satisfaction that such disability exists, draw his warrant on the state treasurer in favour of the said board of managers, for the amount of such deficiency, *which money* shall be applied to the payment of an annual interest of six per cent. to said *new subscribers*, and the *faith of the commonwealth is hereby pledged* for the term of twenty-five years, for the full and punctual payment of *said* interest, provided that the subscriptions shall be paid in such instalments as shall be called for by the managers of said company, and each subscriber shall be entitled to interest only from the time of the actual payment of such instalment, respectively ; and in order to avoid as far as possible all disability to pay such interest, so much of the third section of the act aforesaid as pledges any portion of the avails or nett proceeds of the lottery aforesaid, to the payment of an annual interest to the holders of shares not forfeited in the late Delaware and Schuylkill, and Schuylkill and Susquehanna Companies, be and the same is hereby suspended, until the canal shall be completed ; and the president and managers of said company shall be, and are hereby authorized to continue during the said term of twenty-five years, to raise by way of lottery any sums that may be wanted for the purpose of paying to the holders of said stock the six per cent. as aforesaid :"—and then provides that when the tolls shall amount to six per cent. on all the stock, the lottery privilege shall cease, &c. &c.

Under this law the stock was sold ; managers and officers chosen, and the canal completed. The old stockholders were the applicants to the legislature for all these successive laws, and they either suggested or agreed to all the several legislative provisions, as well

(Swift *v.* Union Canal Company.)

those in prior acts as in the last one.   At their instance, no doubt, the provision in their favour was introduced into section third, of the act of 1819; and in their despair of ever receiving any thing for their stock, or in their confidence of speedy relief from the proceeds if the stock were taken, they either suggested, or if not, certainly agreed to, the provisions of the act of 1821.   By that act, all proceeds from tolls and from the lottery, were pledged to pay interest on the new stock for twenty-five years; and the faith of the state was pledged to make up out of the public treasury, six per cent. interest, on all the new stock for twenty-five years.   And further, it was expressly provided, that the third section of the act of 1819, should be suspended, so far as it directed interest on the old stock, until the canal was completed; in other words, the old stockholders were not to have interest until the canal was completed. Probably both the legislature and the old stockholders believed that the tolls and the lottery would from that time, pay interest on every description of stock, and it is provided that if tolls alone, are not sufficient, the lottery may be continued to raise money to pay interest to old as well as new stockholders; but let it be noticed, that the state *was not pledged to pay such interest,* its payment was left to depend on the tolls and the product of the lotteries.   It happened that the amount subscribed on the twenty-five hundred shares, did not complete the canal; and the board of managers who represented, and whose acts bound old stockholders as well as new, resolved to borrow money to complete the work, and to induce capitalists to loan, they pledged—

1st. The accumulation on lotteries not already pledged, for payment on the subscription of 1821;

2d. The right to raise ultimately by lottery, the residue of four hundred thousand dollars, originally granted by the legislature;

3d. The works already accomplished at the cost of four hundred thousand dollars;

4th. The works as they proceed hereafter, and the tolls arising from the whole.

Money was borrowed in pursuance of the resolution on these terms, and at several subsequent times, amounting, in all, to four hundred thousand dollars, and upward, all on the same or similar pledges.   The right to borrow, and the necessity to borrow are not disputed.   The acts of the board of managers, were the acts of all stockholders, and equally binding on all, whether new or old stockholders; but the terms of the resolution made or rather continued, a marked difference between the new and old stockholders.   The subscribers in 1821, partook of the character of lenders, to whom interest was guaranteed by the state, full as much as the character of stockholders.   The tolls and proceeds of the lottery were pledged to them for twenty-five years, and in addition, the State Treasury was pledged on the faith of the state for

(Swift *v.* Union Canal Company.)

any deficiency. The situation of the old stockholders was essentially different; their interest was suspended until the canal was completed; and then the tolls and lottery, after paying the new subscribers, were to be applied to the payment of the old stockholders. But the amount raised on the new subscription did not complete the canal, and to complete it money was borrowed, and all pledged to pay interest on the loan which could be pledged. I have said the old stockholders were bound by these terms; they were parties to them. Without raising more money, no benefit would have accrued to them, from the canal. But the state was bound for interest to the new subscribers for twenty-five years; as after the canal was completed the tolls were expected to be, and might have been sufficient to pay six per cent. on the old and new stock, and if it was not, the lottery was to be continued, and the proceeds from it in aid of tolls to be applied to pay old stockholders; but there was no engagement by the state, that any interest should accrue to the old stockholders, even after the canal was completed. The loan agreed to by themselves, and for their benefit, intercepted proceeds from tolls and lottery. There is no fund to pay them interest, and no person natural or artificial is bound to pay them.

Throw away the guaranty of the state to new stockholders, and how does the matter stand? A company is formed of subscribers, each of whom expects when the work is completed, to derive from the profits an annual sum equal to interest on the money paid; but before the work is completed, they discover their capital will not complete the work, and they agree to borrow, and pledge the whole proceeds to pay interest on the loan; when completed it will not pay interest on the loan, and interest on capital paid in. To whom can stockholders look for the deficiency? Who is to be sued? Who is liable? Is it not a case of loss? The act of 1821, made a difference in favour of new stockholders, but none in favour of the old, from the common case—except that it continued the lottery, if necessary; but it guaranteed nothing further to old stockholders—there was then no debtor to be sued, no fund liable when this suit was brought, and the plaintiff cannot recover. The old stockholders are precisely in the situation in which the new stockholders will be after twenty-five years have expired; then all will draw equally, and receive or not receive dividends, according as the canal is or is not productive. The law of 1821, makes the difference at present.

But it was said, we might decide that when the proceeds exceeded interest on loans, and on new stock and old, and any surplus remained, that it should be applied to pay arrears of interest on old stock. We can decide no such thing in this suit. The old stockholders deserved great credit, they began the improvement of the state, they persevered under difficulties and discouragements, where many would have despaired. The canal is eminently useful. I hope and believe it will from this time be profitable. I have confi-

dence in the honesty and fairness of the whole company; but I can go no further.    There is nothing before us but the one question, and that is decided for the defendants.

Judgment for defendants.