**Allen PETEET, et al., Plaintiffs,**

**Ann I. Greenhill, Individually and On Behalf of the Heirs of the Estate of James Edward Greenhill, Deceased, Plaintiffs–Appellees,**

v.

**DOW CHEMICAL COMPANY, Defendant–Appellant.**

No. 87–6314.

United States Court of Appeals, Fifth Circuit.

April 4, 1989.

Joseph J. Ortego, Uniondale, N.Y., Mike Hatchell, Tyler, Tex., Michael A. Makulski, Midland, Mich., for defendant-appellant.

Scott Baldwin, Marshall, Tex., for plaintiffs-appellees.

Before GEE, SNEED,* and WILLIAMS, Circuit Judges.

SNEED, Circuit Judge:

Dow Chemical Co. ("Dow") appeals a jury verdict in favor of plaintiffs finding Dow liable in the death of James Greenhill. We affirm.

## I.

## FACTS AND PROCEEDINGS BELOW

In 1976 and 1977, James Greenhill was seasonally employed by the United States Forest Service in Oregon. Although primarily a fire fighter, he occasionally participated in a weed control project called "hack and squirt." This project required Greenhill to apply herbicides manufactured by Dow, exposing him to 2,4–dichlarophenoxyacetic acid (2,4–D). Greenhill's exposure to 2,4–D ceased in 1978 when he was transferred to another park. A year later, Greenhill was diagnosed with Hodgkin's disease. He died seven years later.

Greenhill's surviving spouse, son, and parents sued Dow in the Eastern District of Texas.[1] The case was transferred to the "Agent Orange" products liability action in the Eastern District of New York. After settlement of that case in 1986, Greenhill's action against Dow for the exposure to 2,4–D was returned to Texas.

The case was tried in November and December, 1987. A jury awarded the plaintiffs $1.5 million in damages. Dow appeals.

## II.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332. This court's jurisdiction rests on § 1291.

## III.

## DISCUSSION

A number of issues of various weights are raised by this appeal. It is uncertain whether this number could have been reduced by a more crisp and orderly process than appears to have been employed in this case. It is likely, however, that a more crisp and orderly process would have framed the issues more precisely. The difficulty is that while such a process would have simplified our task, it is by no means clear which party would have been favored or disfavored thereby. We now turn to the issues.

### A. *Notice of Appeal*

Plaintiffs seek to narrow the issues properly before us by asserting that Dow can appeal only the court's order denying the motion for JNOV and the motion for new trial because Dow's notice of appeal only covered these issues. Our task cannot be reduced so easily. Fed.R.App.P. 3(c) requires appellants to designate the judgment or order to be appealed. In its second notice of appeal, Dow stated that it was appealing from the "judgment entered in this action," *and* from the denial of the motion for JNOV and motion for new trial. Notices of appeal should be liberally construed. *See Ingraham v. United States,* 808 F.2d 1075, 1080 (5th Cir.1987). Dow's notice effectively designated the entire record for appeal.

### B. *Dr. Teitelbaum's Testimony*

Dow strongly attacks the plaintiff's principal witness, Dr. Teitelbaum. It argues that the trial court erred in admitting his testimony which was the only evidence that

---

* Circuit Judge of the Ninth Circuit, sitting by designation.

1. Mr. Greenhill died after the suit was filed and the present parties were substituted.

2,4–D caused Greenhill's Hodgkin's disease.

Dr. Teitelbaum's qualifications are substantial. He is a medical doctor and certified in toxicology. 6 R. 11–12, 18. He has had various academic appointments in toxicology and poison control; he has consulted with several corporations on the proper handling of poisonous materials; and he has served on state and federal government advisory committees. 6 R. 11–12, 15, 17. He also testified that he has published 38 or 39 articles on toxicology, 6 R. 19, and that he has extensive experience in evaluating lymphoma to determine "whether there may or may not have been an environmental or occupational cause" for the disease, 6 R. 20.

As to his preparation for this case, Dr. Teitelbaum testified that:

I've reviewed the medical records of Mr. Greenhill, as much as we have been able to get. I have reviewed his deposition. I have reviewed the medical literature on the subject. I've looked at the slides. I had the slides looked at by colleagues....

6 R. 21.

Dr. Teitelbaum's testimony was extensive. He first testified about the difficulty of diagnosing Hodgkin's disease, both in general and in this case. 6 R. 36. On the basis of seven reports by a number of pathologists, Dr. Teitelbaum testified that Greenhill's condition was "most consistent with Hodgkin's disease." [2] 6 R. 51. Next, Dr. Teitelbaum discussed twenty-two scientific articles linking 2,4–D with various diseases including cancer and, specifically, Hodgkin's disease. 6 R. 115–21. He concluded that "to a reasonable medical certainty, Mr. Greenhill's exposure to ... 2,4–D was a significant, contributing cause to his cancer and his death." 6 R. 122.

Dow raises a number of objections about Dr. Teitelbaum's testimony. We will address each in turn.

■ The trial court's admission or exclusion of expert testimony will not be reversed on appeal unless the district court's action was "'manifestly erroneous.'" *Koonce v. Quaker Safety Prods. & Mfg. Co.,* 798 F.2d 700, 721 (5th Cir.1986) (quoting *Perkins v. Volkswagen of Am. Inc.,* 596 F.2d 681, 682 (5th Cir.1979)); *Page v. Barko Hydraulics,* 673 F.2d 134, 139 (5th Cir.1982); *see Bauman v. Centex Corp.,* 611 F.2d 1115, 1120 (5th Cir.1980). Despite this broad discretion, we are mindful that district judges and appellate courts must carefully review an expert's testimony to ensure that the expert has the necessary qualifications and a sufficient basis for his opinion. *See Eymard v. Pan Am. World Airways (In re Air Crash Disaster),* 795 F.2d 1230, 1233–34 (5th Cir.1986).

### 1. *Specialization*

■ First, Dow complains that Dr. Teitelbaum was not qualified to render an opinion because he was not a specialist in any relevant field. Dow preserved this objection. *See* 6 R. 2–5, 28, 43–44. As noted above, Dr. Teitelbaum is a certified toxicologist.[3] The fact that Dr. Teitelbaum is not a specialist in any other field goes to the weight of his opinion, not its admissibility. *See Holmes v. J. Ray McDermott & Co.,* 734 F.2d 1110, 1115 (5th Cir.1984); *see also Payton v. Abbott Labs,* 780 F.2d 147, 155–56 (1st Cir.1985) (upholding the admissibility of two doctors' opinions over the objection that they were clinicians and not research scientists); *Ashland Oil, Inc. v. Delta Oil Prods. Corp.,* 685 F.2d 175, 178 (7th Cir.1982) (upholding admission of expert's opinion despite his lack of specialization in a particular branch of chemistry), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1769, 76 L.Ed.2d 343 (1983); E. Cleary, *McCor-*

**2.** To positively diagnose Hodgkin's disease, a pathologist must find a "Reed–Sternberg" cell in a tissue analysis. 6 R. 42. None of the pathologists were able to find the characteristic cell in any of Mr. Greenhill's tissue slides. 6 R. 44. However, the consensus among all of the pathologists consulted by Dr. Teitelbaum was that

Mr. Greenhill's slides were consistent with a diagnosis of Hodgkin's disease. 6 R. 21, 50.

**3.** Dr. Teitelbaum is certified by the American Board of Toxicology. 6 R. 18–19. The American Medical Association does not certify doctors in toxicology. 6 R. 19.

*mick on Evidence* § 13, at 34 (3d ed. 1984) ("While the court may rule that a certain subject of inquiry requires that a member of a given profession ... be called; usually a specialist in a particular branch within a profession will not be required." (footnote omitted)).

### 2. *Adequate Basis*

Dow next objects to Dr. Teitelbaum's testimony on the grounds that he had no adequate basis for his opinion. Specifically, Dow argues that Dr. Teitelbaum's opinion was inadmissible because: (1) he never examined Greenhill personally, and (2) his opinion was based solely on information supplied by counsel. Dow's overall objection to Dr. Teitelbaum's qualifications properly preserved this issue. 6 R. 2–5.[4]

The Federal Rules of Evidence require that an expert's opinion be based on information "of a type reasonably relied upon by experts in the particular field...." Fed.R.Evid. 703. In making this determination, the trial court should defer to the expert's opinion of what data they find reasonably reliable. *Greenwood Utils. Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1495 (5th Cir.1985); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 277 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Our review of this error is hampered because neither the parties nor the court framed the issue in these terms. Indeed, the district court overruled Dow's objection without comment. 6 R. 6. This court suggested in *Greenwood* that, in the absence of an explicit factual finding on this issue, we must remand the case to the district court. *See* 751 F.2d at 1496. We do not believe a remand in this case is necessary, however. We may take judicial notice that the facts relied on by Dr. Teitelbaum are those usually considered by medical ex-

perts. *See United States v. Lawson*, 653 F.2d 299, 302 n. 7 (7th Cir.1981), *cert. denied*, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982).

The determination of whether an expert meets the requirements of Fed.R.Evid. 703 must be made on a case-by-case basis. *Soden v. Freightliner Corp.*, 714 F.2d 498, 502–03 (5th Cir.1983). We review the district court's actions for abuse of discretion. *Id.* at 503.

■ Dow's first objection, that Dr. Teitelbaum never personally examined Mr. Greenhill, fails to hit its mark. A personal examination of the person or object of the expert's testimony is not required under Fed.R.Evid. 703. In *Sweet v. United States*, 687 F.2d 246, 249 (8th Cir.1982), the government's expert was permitted to testify about the possible effects of LSD on the plaintiffs even though he never examined them. Similarly, in *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1200–01 (Fed.Cir.1987), experts in a patent case testified without physically examining the cash register that allegedly infringed upon plaintiff's patent. *See generally* 3 D. Louisell & C. Mueller, *Federal Evidence* § 389, at 657 (1979) (rule 703 "diminishes the need for the expert to have firsthand knowledge concerning the matters in issue").

■ Dow's second objection, that Dr. Teitelbaum relied on information supplied by plaintiff's counsel in reaching his conclusion, also fails. This does not require the exclusion of the expert's testimony. *See Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir.1985). A different result would infuse many personal injury suits with quite difficult issues of source tracing.

### 3. *Scientific Literature*

■ Dow next argues that Dr. Teitelbaum's testimony should have been exclud-

---

4. Dow, in its motion for summary judgment, also argued that Dr. Teitelbaum's testimony lacked a sufficient basis because he did not know of the extent or duration of Greenhill's exposure to 2,4–D. Although Dow raised this objection in its motion for summary judgment, 2 R. 362–63, Dow failed to renew this objection

either before or during Dr. Teitelbaum's testimony. Any error was therefore waived. *See* Fed.R.Evid. 103(a). Further, Dr. Teitelbaum testified that his opinion was based upon Mr. Greenhill's deposition. 6 R. 21. During his deposition, Mr. Greenhill testified as to the extent of his exposure to 2,4–D.

ed because the scientific articles on which he relied were published after Mr. Greenhill's exposure and, thus, could not form the basis of liability for inadequate warnings. This argument fails for two reasons. First, Dow never objected to Dr. Teitelbaum's testimony on these grounds; any error was waived. *See* Fed.R.Evid. 103(a). Further, while the scientific articles that post-dated Greenhill's exposure may not have been relevant to the adequacy of warnings, they were admissible on the issue of causation. *Cf. Challoner v. Day & Zimmermann, Inc.*, 512 F.2d 77, 79 (5th Cir.) (government study done after accident was admissible on issue of whether ammunition shells were defective), *vacated on other grounds*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975).

■ Dow also complains in its brief that the scientific literature upon which Dr. Teitelbaum relied "dealt with disease entities which Greenhill did not have" or were "wholly irrelevant." During Dr. Teitelbaum's direct examination, Dow's counsel objected to the discussion of two scientific articles detailing neurological damage suffered by patients exposed to 2,4–D on the grounds that plaintiffs alleged no neurological illness.[5] Plaintiffs respond that the neurological symptoms described in these articles were similar to those experienced by Greenhill. Dr. Teitelbaum did not discuss any such link between the neurological studies and Greenhill's symptoms. Nevertheless, we cannot conclude that the admission of this evidence warrants reversal. *See Petty v. Ideco, Div. of Dresser Indus., Inc.*, 761 F.2d 1146, 1151 (5th Cir. 1985) (evidentiary rulings will be disturbed only if they result in substantial prejudice). Dr. Teitelbaum testified that numerous other studies linked 2,4–D and cancer. Use of the neurological damage literature did not substantially prejudice Dow.

### 4. *Cause of Hodgkin's Disease*

Dow next argues that Dr. Teitelbaum's causation testimony was inadmissible be-

cause he admitted that the cause of 95% of all Hodgkin's disease cases is unknown. 6 R. 214. Dow properly preserved this objection. 6 R. 3. Dow, however, has mischaracterized Dr. Teitelbaum's testimony. The doctor clarified his statement by saying that the cause of more cases could be diagnosed if the cases were examined more carefully. 6 R. 214. This complaint goes to the weight rather than the admissibility of Dr. Teitelbaum's opinion.

### 5. *"One-hit" Theory*

Dow also objected to the admission of Dr. Teitelbaum's testimony on the grounds that his "one-hit" theory of causation was "specious." This theory suggests that one molecule of carcinogen, in the right place and at the right time, can cause cancer. 6 R. 133. Although Dow did file a pretrial motion to exclude Dr. Teitelbaum's testimony on these grounds, 1 R. 83–84, Dow failed to renew this objection during his testimony. Thus, Dow failed to preserve anything for review. *See Petty v. Ideco, Div. of Dresser Indus., Inc.*, 761 F.2d 1146, 1150 (5th Cir.1985).

■ Even assuming that this error was preserved, the absence of a scientific consensus on a given theory does not affect the admissibility of an expert's opinion.

> An expert's opinion need not be generally accepted in the scientific community before it can be sufficiently reliable and probative to support a jury finding.... What is necessary is that the expert arrived at his causation opinion by relying upon *methods* that other experts in his field would reasonably rely on in forming their own, possibly different opinions, about what caused the patient's disease.

*Osburn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 915 (5th Cir.1987) (citations omitted). As discussed above, Dr. Teitelbaum arrived at his opinions by relying on the same kind of information relied upon by

---

5. Dow's counsel also objected when another study linking cancer to exposure to phenoxyacetic acids was discussed. Dow objected on the grounds that such acids might differ from 2,4–D, and that the doctor's inference based on this

study was speculative. 5 R. 85. The court overruled this objection. Dr. Teitelbaum then testified that 2,4–D was a phenoxyacetic acid. 6 R. 85–86. The trial court properly overruled the objection.

other medical experts. His testimony was properly admitted.

### 6. *Dow Study*

Finally, Dow objects to Dr. Teitelbaum's testimony on the grounds that he was permitted to testify that 2,4–D contained impurities and that Dow's failure to report these impurities violated EPA regulations. Using a confidential Dow report, Dr. Teitelbaum testified that the 2,4–D produced at Dow's plant contained impurities, 6 R. 104–05, and that these impurities were contributing causes to Mr. Greenhill's cancer, 6 R. 106. Dr. Teitelbaum continued, testifying that EPA regulations require chemical companies to report the finding of impurities in their products, and that, to his knowledge, Dow never reported any finding of these impurities to the EPA. 6 R. 107–08. Dow's counsel repeatedly objected to this line of questioning on the grounds that it was speculative. 6 R. 106, 108, 109, 110.

■ Experts are entitled to rely on studies in forming their opinions. *See, e.g., Mannino v. International Mfg. Co.,* 650 F.2d 846, 851 (6th Cir.1981); *Baumholser v. Amax Coal Co.,* 630 F.2d 550, 552–53 (7th Cir.1980). Thus, Dr. Teitelbaum could use the Dow study to formulate his opinion on the toxicity of Tordon 101.[6]

■ More troublesome, however, was Dr. Teitelbaum's testimony implying that Dow violated the law by not reporting the impurities to the EPA. This testimony was admitted even though these questions were outside the doctor's expertise and there was no evidence that he knew (1) whether the EPA had reporting requirements or (2) whether Dow complied with them. This was error, but we hold it to be harmless. Dow has not shown that Dr. Teitelbaum's testimony was either incorrect or known by Dr. Teitelbaum to be incorrect.

### 7. *Recent Decisions of this Court*

To support its argument that Dr. Teitelbaum's testimony should have been excluded, Dow relies on two recent decisions of this court, *Eymard v. Pan Am. World Airways (In re Air Crash Disaster),* 795 F.2d 1230 (5th Cir.1986) and *Viterbo v. Dow Chemical Co.,* 826 F.2d 420 (5th Cir. 1987). Both of these cases fail to support Dow's contention. In *In re Air Crash Disaster,* the court held that the admission of an economist's testimony was error in a wrongful death action. The court found that the expert made assumptions that were inconsistent with common sense. For example, the economist assumed that the deceased's income would increase 8% annually for forty years, while his taxes would consume only 5% of his income. The court found both assumptions incredible. 795 F.2d at 1234. In *Viterbo,* the court upheld the exclusion of an expert's testimony because the plaintiff's medical history was incomplete in a "critical area," *i.e.,* the doctor failed to consider the history of hypertension and depression in the plaintiff's family history. 826 F.2d at 423. Dr. Teitelbaum's testimony did not suffer from any such defects that cast doubt on the validity of his testimony.

### 8. *Conclusion*

Based on our review of Dr. Teitelbaum's testimony and all of Dow's objections, we conclude that the district court did not abuse its discretion or commit manifest error in admitting his testimony.

### C. *Testimony of Kier and Tipton*

■ Dow next complains of the testimony of Andrew Kier and Paul Tipton, former United States Forest Service employees, who testified about the "hack and squirt" operations. The trial court's decision to admit lay opinion testimony will only be reversed for an abuse of discretion. *Scheib v. Williams–McWilliams Co.,* 628 F.2d 509, 511 (5th Cir.1980). Kier testified that he had seen the task performed although he had never actually done it. *See* 5 R. 49, 56–57. He also testified that those who participated in hack and squirt operations were exposed to Tordon 101 and that it frequently got on their clothes and skin. 5 R. 51. Tipton testified that he had per-

---

**6.** Tordon 101 is the brand name of the herbicide whose main ingredient is 2,4–D.

formed hack and squirt operations and described the process. 5 R. 65–66. Tipton testified that the men who applied the chemicals often were exposed to fumes and that the herbicide had splashed upon himself and other workers. 5 R. 67.

Dow objected to the admission of this evidence on the grounds that it was irrelevant, and because neither witness had seen Mr. Greenhill perform the hack and squirt operation. 5 R. 44–45, 62. The district court overruled the objections. 5 R. 46, 63.

The trial court's admission of this testimony was not error. Both witnesses testified generally about how hack and squirt operations were performed. Each was testifying from his own knowledge and spoke to his own observations. *See generally* E. Cleary, *supra,* § 10.

### D. *Motion for New Trial*

■ Dow, in its next complaint, reveals more about the gamesmanship in litigation than it does about judicial error. It complains about the trial court's denial of its motion for new trial on the basis of newly-discovered evidence.[7] Dow claims that Dr. Teitelbaum testified falsely at trial about knowing a man named Joseph Moss. The facts surrounding this issue are somewhat confused. It seems that before Dr. Teitelbaum's deposition, his assistants collected three boxes of medical records regarding this case for the deposition. 6 R. 223, 224, 227. In one box of documents, the medical records of Mr. Moss, another of Dr. Teitelbaum's patients, were mistakenly included. *See* 6 R. 228. Dow's counsel noticed the error and asked Dr. Teitelbaum what records he relied upon in forming his opinion that 2,4–D caused Greenhill's cancer. The doctor expansively responded that he had relied upon all the documents in the room. 6 R. 233. Dow's counsel then had a stack of documents, including Moss' records, marked as "exhibit 2."

At trial, Dow's counsel produced exhibit 2 and asked Dr. Teitelbaum if he had relied on those records. Dr. Teitelbaum apparently became confused when he saw the Moss records contained in exhibit 2 and stated that he did not know Joseph Moss. 6 R. 219–21. This testimony was false since Moss was a patient of Dr. Teitelbaum.

Eventually, the trial court intervened. In response to the judge's questions, Dow's counsel admitted that he realized during the deposition that Dr. Teitelbaum's assistants had mistakenly included Moss' medical records, which had nothing to do with the Greenhill case. 6 R. 234. He stated he was trying to show that Dr. Teitelbaum made a mistake. 6 R. 239. After the controversy subsided, on redirect examination Dr. Teitelbaum reiterated that his opinion was based on Greenhill's medical records. 6 R. 228, 232.

We will not overturn the district court's refusal to grant a motion for new trial on the basis of newly discovered evidence absent a clear abuse of discretion. *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 917 (5th Cir.1987). In determining whether to grant this motion, the district court should "consider whether the new facts (1) would probably change the outcome; (2) could have been discovered earlier with due diligence; and (3) are merely cumulative or impeaching." *Johnston v. Lucas,* 786 F.2d 1254, 1257 (5th Cir.1986).

Applying this standard, the district court properly denied Dow's motion. That Dr. Teitelbaum erroneously claimed not to know Joseph Moss could not have affected the outcome of the trial. Dow's counsel knew of the source of the mistake from an early point in the litigation. In his cross-examination of Dr. Teitelbaum, Dow's counsel effectively revealed that the doctor testified in hundreds of trials. 6 R. 140. The further revelation that Dr. Teitelbaum had forgotten the name of one patient could not have affected the jury's verdict.

---

7. Dow also contends that the district court erred in overruling their motion for JNOV for the same reasons. A motion for JNOV should be granted when there is insufficient evidence to support the jury's verdict. *See Kendrick v. Illi-* *nois Cent. Gulf R.R.,* 669 F.2d 341, 343 (5th Cir.1982). A motion for JNOV is not the proper remedy for Dow's claim. Thus, the district court properly denied Dow's motion on this ground.

Dow was not hurt by Dr. Teitelbaum's confusion. *Compare Harre v. A.H. Robbins Co.*, 750 F.2d 1501, 1505 (11th Cir. 1985) (plaintiff was entitled to a new trial based on evidence that doctor falsely testified that he had supervised experiments on IUDs).

### E. *Motion to Transfer Venue*

■ Dow's third ground of error complains of the district court's denial of its motion to transfer venue to Oregon under 28 U.S.C. § 1404(a) (1982). 3 R. 671–80. A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Marbury–Pattillo Constr. Co. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir.1974). The trial court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3847, at 370 (1986).

After reviewing the record, we conclude that the district court did not abuse its discretion in denying Dow's § 1404(a) motion. To begin, the plaintiff is generally entitled to choose the forum. *See Menendez Rodriguez v. Pan Am. Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir.1962) (plaintiff's choice of forum should be "highly esteemed"), *vacated on other grounds*, 376 U.S. 779, 84 S.Ct. 1130, 12 L.Ed.2d 82 (1964). Second, Dow's motion to transfer venue would have caused yet another delay in this protracted litigation. Dow's motion to transfer venue was not filed until eighteen months after the case was remanded to the Eastern District of Texas. 3 R. 671. Parties seeking a change of venue should act with "reasonable promptness." 15 C. Wright, A. Miller & E. Cooper, *supra*, § 3844, at 335–37. Courts have considered a party's delay in denying a motion to transfer. *See, e.g., McGraw–Edison Co. v. Van Pelt*, 350 F.2d 361, 364 (8th Cir.1965); *Meinerz v. Harding Bros. Oil & Gas Co.*, 343 F.Supp. 681, 682 (E.D.Wis.1972). Fi-

nally, Dow made no showing that Oregon was a more convenient forum.

Dow, relying on *Trivelloni–Lorenzi v. Pan Am. World Airways (In re Air Crash Disaster)*, 821 F.2d 1147 (5th Cir.1987), complains vigorously that the trial court erred in not articulating in its order the specific facts and circumstances upon which it relied in denying Dow's motion. *See* 3 R. 563. While we recognize that this would be the better practice, *see, e.g., In re Pope*, 580 F.2d 620, 623 (D.C.Cir.1978); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973), and that the trial court inexplicably did not articulate its reasons for its rulings, we decline to impose an inflexible rule requiring district courts to file a written order explaining their decisions.

Dow's reliance on *In re Air Crash* is misplaced. In that case this court required district courts in denying a motion to *dismiss* on the grounds of *forum non conveniens* to file a written order or to make a statement on the record explaining its denial. *See* 821 F.2d at 1166. Needless to say, a motion to dismiss on grounds of formum non conveniens implicates different interests than a motion to transfer venue. The Supreme Court has stated that these two motions are not "directly comparable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 n. 26, 102 S.Ct. 252, 267 n. 26, 70 L.Ed.2d 419 (1981); *see also* 15 C. Wright, A. Miller & E. Cooper, *supra*, § 3847, at 372–75 (discussing the differences between motions to transfer venue and motions to dismiss on grounds of forum non conveniens). The trial court did not abuse its discretion in denying Dow's motion to transfer venue.

### F. *The District Court's Actions*

In its final ground of error, Dow charges that the district court's "overall supervision and management of this case deprived Dow of a fair trial." In this portion of its brief, Dow simply catalogues a number of adverse rulings by the trial court. We have examined the record and, while not entirely happy with what we see, we find no basis

for this charge. The trial was fair although not perfect.

### G. *Dow's Reply Brief*

Dow raises four additional grounds of error in its reply brief. We may not review arguments raised for the first time in the appellant's reply brief. *Light v. Blue Cross & Blue Shield, Inc.*, 790 F.2d 1247, 1248 n. 2 (5th Cir.1986); *United States v. Birdsell*, 775 F.2d 645, 655 n. 4 (5th Cir. 1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure*, § 3974, at 428 (1977). We do not reach these issues.

The judgment of the district court is AFFIRMED.