# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2022

Lyle W. Cayce
Clerk

No. 21-20317

Daija Jackson; Sharobin White; Latoya Idlebird; Dinah Clark; Janey Williams; Lawanda Douglas; Amanda Williams; Shirley Andrews; Misty Joseph,

*Plaintiffs—Appellants*,

*versus*

United States Department of Housing and Urban Development,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2468

Before Southwick, Haynes, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Plaintiffs-Appellants ("Plaintiffs") were tenants at Arbor Court, a Houston apartment complex that received subsidies from the United States Department of Housing and Urban Development ("HUD"). After flooding that occurred during Hurricane Harvey, Arbor Court's owner failed to maintain the property in decent, safe, and sanitary condition. Accordingly, HUD approved a transfer of the complex's subsidy to a different property,

No. 21-20317

offering Arbor Court tenants a choice between moving at no cost to the new property or receiving housing vouchers that they could use at new housing of their choice. After choosing the latter option, Plaintiffs sued HUD, seeking relocation assistance under the Uniform Relocation Act ("URA"). The district court dismissed the complaint. We AFFIRM.

## I.

Plaintiffs were tenants at Arbor Court, an apartment complex in Houston, Texas. Arbor Court participated in HUD's Project-Based Rental Assistance ("PBRA") program, a form of housing assistance in which "rental assistance is paid for families who live in specific housing developments or units." 24 C.F.R. § 982.1(b)(1); *see also* 42 U.S.C. § 1437f(f)(6).[1]

In 2017, Arbor Court experienced severe flood damage during Hurricane Harvey. Arbor Court's owner, DM Arbor Court LTD (the "Owner"), subsequently failed to maintain the property in decent, safe, and sanitary condition. HUD eventually informed the Owner that it had defaulted on its HUD Housing Assistance Payments ("HAP") contract, and in response the Owner requested a so-called "Section 8(bb) subsidy transfer," asking HUD to transfer Arbor Court's PBRA funding to another property, Cullen Park Apartments, under the terms of 42 U.S.C.

---

[1] Section 8 of the United States Housing Act of 1937 ("Section 8") authorizes HUD to pay this assistance. *See* 42 U.S.C. § 1437f(a) ("For the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this section."). The present form of Section 8 originates in the Housing and Community Development Act of 1974, which amended the Housing Act of 1937. *See* Pub. L. No. 93-383, sec. 201(a), § 8, 88 Stat. 633, 662-66. Section 8 programs can take the form of "project-based assistance," which is tied to particular housing units, or "tenant-based assistance," which is tied to particular households. *See* 42 U.S.C. § 1437f(f)(6)-(7); 24 C.F.R. § 982.1(b).

§ 1437f(bb)(1). HUD approved the request. HUD then gave Arbor Court tenants the option of either relocating to Cullen Park, with their moving expenses paid by the Owner, or accepting Tenant Protection Vouchers ("TPVs") and relocating to other housing of their choice.[2]

Plaintiffs sued HUD in July 2018. At the time Plaintiffs filed suit, the Owner had not yet submitted the Section 8(bb) subsidy transfer request, and Plaintiffs sought both "a final judgment that Plaintiffs' leases with Arbor Court are terminated without any default by Plaintiffs" and an injunction "ordering HUD to continue to provide plaintiffs with a housing choice voucher and the other assistance necessary to obtain affordable decent, safe, and sanitary housing." After HUD approved the transfer of Arbor Court's PBRA funding to Cullen Park, Plaintiffs did not relocate to Cullen Park, but rather received TPVs. Plaintiffs then filed their second amended complaint, seeking to compel HUD to provide them with relocation benefits, including moving expenses, under the Uniform Relocation Act ("URA").[3] The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim, explaining that "Plaintiffs cannot qualify as displaced persons under the URA and are not entitled to relocation

---

[2] TPVs "are provided to protect HUD-assisted families from hardship as the result of a variety of actions that occur in HUD's Public Housing (Low-Rent) and Multifamily Housing portfolios." Office of Public & Indian Housing, U.S. Department of Housing and Urban Development, Notice PIH-2018-09, ¶ 6 (May 21, 2018), https://www.hud.gov/sites/dfiles/PIH/documents/pih2018-09.pdf. TPVs are a part of HUD's Housing Choice Voucher program, *see id.*, a form of tenant-based assistance in which "[f]amilies select and rent units that meet program housing quality standards." 24 C.F.R. § 982.1(a)(2); *see also* 42 U.S.C. § 1437f(o) (statutory authorization for program).

[3] In their second amended complaint, Plaintiffs also challenged "HUD's final agency action for withholding the required site and neighborhood standard review under HUD Notice 2015-03" and "HUD's final agency action of approving the Section 8(bb) transfer." However, the district court dismissed these claims, and Plaintiffs do not renew them on appeal.

assistance from HUD beyond the housing vouchers they have already received." Plaintiffs then filed this appeal.

## II.

"Appellate courts conduct a *de novo* review of a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). "Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted.' Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'" *Id.* (citations omitted). "Dismissal under Rule 12(b)(6) also is warranted if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In making this evaluation, "the court 'must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Id.* (cleaned up).

## III.

## A.

The Uniform Relocation Act provides that "[w]henever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment to the displaced person of," inter alia, "actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property." 42 U.S.C. § 4622(a). As relevant to residential tenancies, the URA defines the term "displaced person" as "any person who moves from real property, or moves his personal property from real property":

> (I) as a direct result of a written notice of intent to acquire or the acquisition of such real property in whole or in part for a

No. 21-20317

program or project undertaken by a Federal agency or with Federal financial assistance; or

(II) on which such person is a residential tenant . . . , as a direct result of rehabilitation, demolition, or such other displacing activity as the lead agency [the Department of Transportation] may prescribe, under a program or project undertaken by a Federal agency or with Federal financial assistance in any case in which the head of the displacing agency determines that such displacement is permanent.

42 U.S.C. § 4601(6)(A)(i); *see id.* § 4601(12) ("The term 'lead agency' means the Department of Transportation."). Thus, as the Supreme Court has explained, the URA does not "provide assistance for all persons somehow displaced by Government programs." *Alexander v. U.S. Dep't of Hous. & Urb. Dev.*, 441 U.S. 39, 60 (1979). Rather, URA assistance is only available for those who meet the statutory definition of "displaced person."

Plaintiffs have not pled that they moved from Arbor Court "as a direct result of a written notice of intent to acquire or the acquisition of such real property [i.e. Arbor Court] in whole or in part for a program or project undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4601(6)(A)(i)(I). After all, Arbor Court was not acquired by a federal agency or with federal financial assistance; rather, Cullen Park was. Likewise, given that Plaintiffs have not pled that they moved because Arbor Court was either rehabilitated or demolished, Plaintiffs have not moved as a "direct result" of "rehabilitation" or "demolition" occurring "under a program or project undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4601(6)(A)(i)(II).

However, Plaintiffs argue that they are nonetheless eligible for URA assistance because they moved from Arbor Court "as a direct result of . . . such other displacing activity as the lead agency may prescribe." *Id.* Specifically, they argue that under the applicable Department of

5

Transportation ("DOT") regulations, the Section 8(bb) subsidy transfer from Arbor Court to Cullen Park qualifies as "such other displacing activity."

Plaintiffs rely primarily on the following DOT regulation: "The phrase program or project means any activity or series of activities undertaken by a Federal Agency or with Federal financial assistance received or anticipated in any phase of an undertaking in accordance with the Federal funding Agency guidelines." 49 C.F.R. § 24.2(a)(22). Plaintiffs reason that the Section 8(bb) subsidy transfer, which allegedly involved federal funds and required HUD approval, was a "series of activities" undertaken both "by a Federal agency" and "with Federal financial assistance."

However, this regulation merely defines the phrase "program or project." It does not prescribe any "displacing activit[ies]" that cause one to become a "displaced person" under the URA. Indeed, Plaintiffs do not argue, and our research does not reveal, that the DOT has promulgated any regulation prescribing that a Section 8(bb) subsidy transfer is a "displacing activity" for purposes of the URA. Accordingly, even if we assume arguendo that the subsidy transfer from Arbor Court to Cullen Park meets the regulatory definition of "program or project," Plaintiffs still do not qualify as "displaced person[s]" under the URA. After all, the statute does not provide that any person who moves because of a "program or project" is a "displaced person." Rather, as relevant to this argument, only those residential tenants who move both "under a program or project" and "as a direct result of . . . such . . . displacing activity as the [DOT] may prescribe" qualify as "displaced person[s]." 42 U.S.C. § 4601(6)(A)(i)(II). Because Plaintiffs have neither pled that they moved as a result of a "displacing activity," as prescribed by the DOT, nor otherwise pled facts indicating that they qualify as "displaced person[s]," they are not entitled to URA assistance. *See* 42

No. 21-20317

U.S.C. § 4622(a) (providing that only "displaced person[s] are eligible for URA assistance).[4]

### B.

Plaintiffs further argue that, regardless of the actual text of the URA and its implementing regulations, they qualify for URA assistance under various regulations and guidance documents. These arguments fail for multiple reasons.

As an initial matter, neither regulations nor guidance documents could provide Plaintiffs with an entitlement to URA benefits not authorized by statute. "An administrative agency's authority is necessarily derived from the statute it administers and may not be exercised in a manner that is inconsistent with the administrative structure that Congress has enacted." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014). Though, as explained above, the URA allows the DOT to prescribe "other displacing activity" that can cause a party to become a "displaced person," the statute does not authorize HUD to expand the definition of this term. Accordingly, any HUD regulation that purported to mandate the provision of URA benefits to parties that do not meet the

---

[4] *Cf. Alexander*, 441 U.S. at 60 ("Congress did not expect to provide assistance for all persons somehow displaced by Government programs."); *Devines v. Maier*, 665 F.2d 138, 148 (7th Cir. 1981) (holding that because "defendants' enforcement of housing codes by evicting plaintiffs from structures determined by the building inspector to be unfit for human habitation did not constitute an acquisition under 42 U.S.C. § 4601(6), . . . the plaintiffs are not 'displaced persons' entitled to URA benefits"); *Goodwin v. Miller*, No. 2:17-CV-01537, 2019 WL 1416885, at *10 (W.D. Pa. Mar. 29, 2019) (rejecting URA claim where "[t]he only Federal action taken . . . was HUD's ending of a funding stream," explaining that the plaintiff "did not have to move because of the acquisition, rehabilitation, or demolition of a property undertaken by a federal agency or with federal money, but rather because Homewood [the property owner] allowed the Property to fall into disrepair, and Esperanza (a private entity) wants to fix up the building").

definition of "displaced person" found in the statute or its implementing regulations would be invalid. *See Harris v. Lynn*, 555 F.2d 1357, 1359 (8th Cir. 1977) (explaining, in the URA context, that "HUD cannot extend benefits by regulation to a class of persons not included within the authorizing statute"); *Schism v. United States*, 316 F.3d 1259, 1284-85 (Fed. Cir. 2002) ("[A] regulation promulgated under the auspices of [a statute] cannot convey or authorize an entitlement unless that statute clearly so provided. . . . [A]n agency cannot do by regulation what the applicable statute itself does not authorize.").

Moreover, Plaintiffs are incorrect in their reading of the relevant regulations and guidance. Plaintiffs principally rely on HUD Notice H-2015-03 (the "Notice"), arguing that it "specifies that PBRA tenants subject to a Section 8(bb) transfer are entitled to relocation assistance under the URA." However, the Notice does no such thing. The relevant portion of the Notice provides as follows:

> Any residents that move as a direct result of acquisition, rehabilitation or demolition for an activity or series of activities that includes transfer of budget authority under Section 8(bb) may become eligible for relocation assistance under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA).

Rather than purporting to expand the class of residents eligible for URA benefits, the Notice merely recognizes that some Section 8(bb) subsidy transfers "may" coincide with federal actions that implicate the URA. Further, the Notice carefully tracks the statutory language, limiting its application only to those residents who move "as a direct result of acquisition, rehabilitation or demolition." *Cf.* 42 U.S.C. § 4601(6)(A)(i) (defining displaced person in terms of the "acquisition," "rehabilitation," and "demolition" of property). The Notice thus confirms that URA

assistance is available in a case involving a Section 8(bb) subsidy transfer from a property only if the case also involves, among other statutory requirements, an acquisition, rehabilitation, or demolition. As explained above, this case does not involve such circumstances.

Plaintiffs also emphasize the following sentence from Section VII.B of the Notice: "Under no circumstances shall the residents pay for any relocation costs incurred as a result of this transaction." However, the "transaction" that Section VII.B refers to is "[r]elocation," a situation in which tenants move within the PBRA program, either "to a different unit in Project A [i.e. Arbor Court] or to a unit in Project B [i.e. Cullen Park]." Here, Plaintiffs chose to accept Tenant Protection Vouchers rather than relocate to Cullen Park, and when "a tenant chooses not to relocate," their rights are described in Section VII.C of the Notice (titled "Tenant Protection"), rather than Section VII.B of the Notice (titled "Relocation"). Section VII.C states that Tenants who choose not to relocate will generally be offered TPVs, but it does not refer at all to URA assistance.

Additionally, Plaintiffs repeatedly cite 24 C.F.R. § 886.338 (the "Regulation"), a HUD regulation, arguing that "Plaintiffs are 'displaced persons' under HUD's URA regulation" and that the Regulation "mandate[s] provision of relocation assistance to Arbor Court tenants." Once again, Plaintiffs are incorrect. The Regulation provides, in relevant part:

> For purposes of this section, the term displaced person means a person (family, individual, business, nonprofit organization, or farm) that moves from real property, or moves personal property from real property, permanently, *as a direct result of acquisition, rehabilitation, or demolition* for a project assisted under this part. This includes any permanent, involuntary move for an assisted project, *including any permanent move from the real property that is made . . . [a]fter notice by the owner to move*

No. 21-20317

*permanently from the property*, if the move occurs on or after the
date of the submission of the application to HUD.

24 C.F.R. § 886.338(g)(1) (emphases added). Plaintiffs focus on the second
sentence of the Regulation and reason that they qualify as "displaced
person[s]" because the Owner notified them of the Section 8(bb) subsidy
transfer. However, Plaintiffs overlook the Regulation's first sentence, which,
just like the URA, requires a "displaced person" to have moved "as a direct
result of acquisition, rehabilitation, or demolition." *Cf.* 42 U.S.C.
§ 4601(6)(A)(i). Thus, as with the Notice, the Regulation parallels the
URA's definition of "displaced person" rather than purporting to expand it.
Accordingly, it offers no support to Plaintiffs' claim.[5]

Finally, Plaintiffs call the court's attention to HUD Handbook 1378,
*Tenant Assistance, Relocation and Real Property Acquisition Handbook* (the
"Handbook"), and 49 C.F.R. § 24.301(a)(1). The Handbook states, "Any
displaced residential owner-occupant or tenant-occupant who qualifies as a
displaced person (defined at 49 CFR 24.2(a)(9)) . . . is entitled to a payment

---

[5] Plaintiffs suggest in their reply brief that they qualify as "displaced person[s]"
under the Regulation because they were in fact "compelled to move as a direct result of an
acquisition"—not the acquisition of Arbor Court, but rather the Owner's "HUD approved
acquisition of Cullen Park." However, because Plaintiffs did not raise this argument until
their reply brief, they have waived it. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th
Cir. 1989) ("We may not review arguments raised for the first time in the appellant's reply
brief."). Moreover, even assuming arguendo not only that Plaintiffs have preserved the
argument but also that they would in fact qualify as "displaced person[s]" under the best
reading of the Regulation, this argument still would not advance Plaintiffs' claim for URA
assistance. After all, the URA clearly states that a "displaced person" must have moved
from the property being acquired, not some other property, *see* 42 U.S.C.
§ 4601(6)(A)(i)(I) (defining "displaced person" as "any person who moves from real
property . . . as a direct result of . . . the acquisition of such real property"), and, as
explained above, a regulation cannot override a statute. *Cf.* 42 U.S.C. § 4601(6)(A)(i)(II)
(authorizing the DOT to expand the definition of "displaced person" but not authorizing
HUD to do so).

No. 21-20317

for his or her moving and related expenses." Handbook ¶ 3-2(A). Similarly, 49 C.F.R. § 24.301(a)(1) provides, "Any owner-occupant or tenant who qualifies as a displaced person (defined at § 24.2(a)(9)) and who moves from a dwelling . . . is entitled to payment of his or her actual moving and related expenses." However, 49 C.F.R. § 24.2(a)(9) (a DOT regulation implementing the URA) requires a "displaced person" to have "move[d] from the real property" either "[a]s a direct result of . . . the acquisition of[] such real property" or "[a]s a direct result of rehabilitation or demolition for a project."49 C.F.R. § 24.2(a)(9)(i). Because, as previously explained, Plaintiffs did not move for any of these reasons, neither the Handbook nor 49 C.F.R. § 24.301(a) applies to this case.

In addition to these regulations and guidance documents, Plaintiffs claim that HUD has paid the moving expenses of Tenant Protection Voucher recipients in other cases. Plaintiffs alleged in their complaint that HUD provided "tenant protection vouchers and relocation assistance to PBRA tenants at three PBRA projects in Hartford, Connecticut who are relocating because HUD terminated the HAP contract for the PBRA project because the housing conditions did not meet HUD's housing quality standards." Similarly, Plaintiffs observe that in *Goodwin v. Miller*, a case in which a tenant brought a variety of claims against HUD and several other defendants, the court stated that HUD had "terminated" a "project-based Section 8 contract" with a property and then "provided every tenant with relocation benefits and a voucher." No. 2:17-CV-01537, 2019 WL 1416885, at *1-2 (W.D. Pa. Mar. 29, 2019).[6]

---

[6] The *Goodwin* plaintiff brought suit primarily "in an effort to remain in his unit despite the unsanitary and unsafe conditions, and to force rehabilitation of the unit." *Id.* at *1.

11

No. 21-20317

However, *Goodwin* and the Hartford projects are legally and factually distinct from this case. *Goodwin* did not involve a Section 8(bb) subsidy transfer, *see id.*, meaning that the *Goodwin* tenants only had the option of accepting TPVs, unlike Plaintiffs, who had the option of moving to Cullen Park at the Owner's expense.[7] And the Hartford tenants likely received relocation assistance under 24 C.F.R. § 886.323(e), a non-URA HUD regulation requiring HUD to "provide assistance in finding [another dwelling] unit for the family" if certain requirements are met. 24 C.F.R. § 886.323(e). Plaintiffs do not argue on appeal that § 886.323(e) applies to their situation, but rather seek relief solely under the URA. Thus, *Goodwin* and the three Hartford projects do not affect our analysis of this case.

IV.

For the foregoing reasons, Plaintiffs are not entitled to relocation assistance under the URA. Accordingly, we AFFIRM the judgment of the district court.

---

[7] Plaintiffs do allege that the "PBRA contracts for [the Hartford] projects are . . . being transferred by HUD to other locations."